In re William Edward TOWE, a/k/a Edward Towe, and Cora Florence Towe, a/k/a Florence, Debtors.

Bolton LLOYD, Plaintiff,

v.

William Edward TOWE, and Cora Florence Towe, and Gregory Luinstra, Trustee, Defendants.

Bankruptcy No. 9011695–7.
Adversary No. 97/00074.

United States Bankruptcy Court, D. Montana, Butte Division.

Sept. 25, 1997.

Thomas E. Towe, Billings, MT, for Debtors.

Kevin E. Vainio, Butte, MT, for Plaintiff.

Gregory A. Luinstra, Great Falls, MT, for Defendants.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, after due notice, hearing was held on September 17, 1997, at Butte to determine the merits of the Amended Complaint filed by Plaintiff, Bolton Lloyd ("Lloyd"), against Defendants, William Edward Towe ("Towe"), Cora Florence Towe and Intervener, Gregory Luinstra, Chapter 7 Trustee, on September 3, 1997, and on Trust-

ee's and Towe's counterclaims thereto. After Plaintiff's filing of the amended complaint, the Trustee filed a Motion for Expedited Hearing on September 11, 1997, since an impending auction of the vehicle in question is set for September 20, 1997. The Trustee appeared in person, as did both parties, who were represented by counsel, and admitted in open court they were ready for trial. The parties also testified in their own behalf. Exhibits 1 and A–F, H, I and K were admitted into evidence, and extensive argument was heard. Upon close of the hearing, the Court took the matter under advisement, and having heard the oral arguments of counsel, now deems the dispute ripe for adjudication. This Order shall constitute findings of fact and conclusions of law resolving this matter pursuant to Federal Rule of Bankruptcy Procedure 7052.

Lloyd contends that when he transferred possession to Towe's Antique Ford Collection in September, 1973, of a 1936 Ford Phaeton, he did so only as a loan for Towe's Ford Museum located in Deer Lodge, Montana. Lloyd further contends that as holder of the certificate of title to the vehicle, he is the prima facie owner of title, and the statutes of limitations and fraud preclude Towe or the Trustee from challenging the presumption that Lloyd owns title to the vehicle. Towe on the other hand contends that he purchased the car from Lloyd, that the parties never intended a loan, and that in his action to quiet title, the certificate of title and its possession has no relevance.

## I.

■ The parties do not dispute several facts. In September of 1973, Lloyd transferred possession of the subject automobile to Towe. In exchange, Towe gave Lloyd three checks totaling $2,100.00—one, dated January 18, 1972, for $1,000.00 denoted "a deposit on 36 Ford Phaeton bal. of $1100 due on delivery in spring of 1972" and the other two—one dated February 2, 1997, denoted "payment on 36 Phaeton bal [sic] due $600 upon delivery" for $500.00—and the other, dated September 8, 1973, denoted "bal. Due on 1936 Ford Phaeton missing parts to be delivered later" for $600.00—all of which

Lloyd admitted he endorsed and negotiated. At the time, Towe also asked Lloyd for the certificate of title, and made repeated requests over the years thereafter, but Lloyd always stated the title was misplaced among his other car titles. In 1985, Towe had the car restored, exchanging another 1936 Ford Phaeton to the restorer for the work. The restorer painted the car a beige or tan color. Towe then put the car on display with the Towe Antique Ford Collection, mounting a plaque with the vehicle indicating it had been "acquired from Bolton Lloyd of Butte." There it has since remained, later becoming an asset of the Towe Chapter 7 estate. Less than a year ago, however, Lloyd made demand for its return, which has precipitated the instant adversary action.

The parties vary, however, on a number of other factual questions. Lloyd claims he and Towe arranged the transfer as a loan in the expectation that Towe would restore the car to its original black color with red trim, place it in a museum for protection, and mount with it a plaque in dedication to Lloyd's deceased son. Lloyd also claims he made the purported loan on condition that the car never leave the museum or Montana, and ownership would never change hands. Given this, Lloyd refused turn-over of the certificate of title because he thought it unnecessary for the safe-keeping of the car. Lloyd admits Towe asked for the certificate of title on several occasions after the transfer of possession of the car, but he cannot remember how many. In addition, Lloyd admitted he did not remember accepting and negotiating the $2,100.00 from Towe in three separate checks. Finally, he claims the car has great sentimental value to him, and he parted with it only with great hesitance, and only upon the conditions he claims to have imposed.

Towe's version of the transfer differs significantly from Lloyd's. By his account, in January of 1972, Towe gave Lloyd a check for $1,000.00 as a down-payment on the outright purchase of the Phaeton. He would tender the balance of $1,100.00 on delivery of the car, sometime in the spring of 1972. At the time, he valued the car in its condition at $2,000.00, but paid an extra $100.00 to induce

Lloyd to sell. Despite Towe's having asked for delivery of the car and the certificate of title on several occasions, however, Lloyd never took steps to allow Towe to obtain the vehicle until much later, in September of 1973. At that time Lloyd delivered the car to Towe, with two items missing, including the old side curtains the touring vehicle had on the windows instead of glass. On the final check delivered to Lloyd, Towe noted in writing the fact of the missing articles, and that he understood Lloyd would deliver them later. Over the years, Towe asked for the curtains and the certificate of title on many occasions, including at least once about five years ago. Every time, Towe asserts Lloyd responded by promising delivery, until early 1997 when Lloyd first began disputing ownership of the car.

The factual question of whether Towe and Lloyd intended a sale or loan of the car turns on more than the credibility of the two witnesses. Review of the objective facts and actions of the parties supports Towe's rather than Lloyd's version. Simply put, both parties acted as reasonable people would if a sale had been intended, and on the whole, inconsistently with what one would reasonably expect had they intended a loan. For example, Towe always insisted on delivery of the certificate of title, and by his account, Lloyd never expressly refused, he just failed to deliver as promised. Lloyd never denied this, rather, he merely explained at trial that he thought it was unnecessary because the car was housed in a museum. These actions by both parties are more consistent with a sale than with a loan. Had the parties intended a loan, delivery of the certificate of title would have held no significance or concern for Towe. On the other hand, had Lloyd intended a loan, as the rightful owner of the car, he would flatly have refused delivery of the certificate title on that specific ground.

In addition, by all accounts, at the time Towe picked up the car, it was in restorable but not showroom condition. Indeed, both parties contemplated a restoration, which both would have realized would have meant significant expense. Had Towe undertaken to restore a borrowed rather than purchased vehicle, in order to protect his investment of time and money in the restoration, it would have been reasonable for him to have sought some sort of agreement that the museum obtain an express long term loan contract, at least orally if not in writing. Neither party, however, recalls such discussions. Nevertheless, however, the objective actions of the parties—once again—supports a sale. Towe took delivery. In exchange, Lloyd negotiated the checks. Towe kept the car in storage for some 12 years, continuing to ask for the certificate of title and the missing parts. Lloyd promised to deliver. In 1985, at the expense of $10,000, Towe had the Phaeton restored to museum condition. Towe then placed the car on display with the Towe Antique Ford Collection, never consulting with or informing Lloyd of the restoration. These are simply not the actions of a curator of someone else's car. Towe always acted as if he owned the vehicle, and as if he felt secure in that ownership.

Furthermore, Lloyd did not act as an owner. He never kept track of the car or its condition and whereabouts. It took Towe almost 13 years to get the automobile in showroom condition. Yet Lloyd, who professes a sentimental attachment to the car, never requested an accounting for what had happened to it, or the status of the restoration. Although Lloyd lives in Butte, just a short drive to the museum in Deer Lodge that houses the car, he never bothered to look at the restored car until long after he learned from a third party that it had been placed on display there. Perhaps the most significant single piece of evidence on this account is the reaction Lloyd had upon finally seeing the car as Towe had displayed it. Lloyd gave emotional testimony of how he had asked and Towe had promised as a condition of the purported loan, that Towe would display the car painted black with red trim, under a commemorative plaque in honor of Lloyd's deceased son Tommy. Towe had the car painted a shade of light brown, however, and had mounted a plaque indicating the car had been "acquired from Bolton Lloyd of Butte," without mention of Lloyd's son. Lloyd recounted angrily to being "disgusted" with the result. Yet, he never complained to Towe. Given his emotional reaction to the

display of a car to which he had such a sentimental attachment, a reasonable *owner* would have protested to Towe and demanded a remedy. On the other hand, a reasonable *seller* of the car would have done as Lloyd did—merely regret having parted with it. Given the weight of the evidence, the Court finds the parties always acted as if they intended a sale.

As a final note, both parties gave testimony which revealed faulty memories of events occurring upwards of twenty five years in the past. Towe, however, had a much greater grasp of significant details, supported by documentary evidence including checks and certificate of title, and the Court therefore finds his testimony more credible with regard to recall of events. This does not speak to the subjective beliefs of the two, which the Court finds equally sincere. The Court basis its factual determination on an analysis of the reasonableness of the objective facts, and on the consistency of the parties memories with those facts. In sum, in the transfer of the 1936 Phaeton from Lloyd to Towe, the parties intended a sale—nothing more, nothing less.

## II.

 State law governs the instant contract and title issues not dealt with by federal statutes. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In Montana persons claiming title to personal property, whether or not they have possession may bring an action to quiet title. Mont. Code Ann. § 70–2–201.[1] Montana's version of the Uniform Commercial Code governs transfer of title to automobiles and other goods. *Safeco Ins. Co. v. Lapp*, 215 Mont. 196, 695 P.2d 1310, 1313 (Mont.1985). The UCC provides

> Each provision of this chapter with regard to rights, obligations and remedies of the seller, buyer, purchasers or other third parties applies irrespective of title to the goods except where provision refers to

such title. Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:

> \* \* \* \* \* \*

> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to physical delivery of the goods, despite reservation of a security interest and even though a document of title is to be delivered at a different time and place; ...

Mont.Code Ann. § 30–2–401; *Safeco*, 695 P.2d at 1313.

 Montana has certain other relevant statutes dealing with title to vehicles and certificates of title. As the Montana Supreme Court has taught:

> In 1971, the legislature deleted § 53–109(d) R.C.M. (1947) from the Laws of Montana. At the same time, new legislation setting forth the procedure to transfer and register motor vehicles was enacted. This new law is primarily aimed at public regulation of automobiles and not at determining legal ownership. Section 61–3–105, MCA, creates a presumption of ownership in the registrant for the purposes on Title 61. This evidentiary presumption can be overcome by the facts in a particular case. Section 61–3–201, MCA, relied upon by the appellant, sets forth requirements for transferring the certificate of ownership. They are not requirements to transfer ownership itself between two parties ....

*Safeco*, 695 P.2d at 1312. The Court duly notes that a contrary result obtained in *American States Insurance Co. v. Angstman Motors, Inc.*, 343 F.Supp. 576 (1972). That case has two distinguishing characteristics, however, that make it non-binding in the instant decision. First, the court decided as a matter of fact that the parties never intended a sale before the date of the accident

---

1. Mont.Code Ann. § 70–1–201 provides:

 Any person claiming title to personal property, whether in actual possession thereof or not, may bring an action in the district court of any county wherein such personal property or any part thereof is situated against any person or persons claiming any interest therein by reason of alleged ownership, lien, or otherwise and by a decree of such court may have established and determined finally the rights of all claimants to such personal property.

in question. *Id.* at 579. Second, and more important, the case arose from transactions occurring prior to the 1971 change in the statutes. Commentators on the UCC agree. For instance, Anderson on the UCC explains:

> In jurisdictions [like Montana] that recognize the general rule that a title certificate is not essential to ownership, the fact that a person has a title certificate does not conclusively establish his or her ownership, but is held to be merely prima facie evidence of title. In these states, a transfer of title may occur within the scope of UCC § 2–401 when the parties agree that the automobile "belongs" to the other party even thought nothing has been done with respect to the title certificate.

3A Ronald A. Anderson, *Uniform Commercial Code* § 2–401:40 (3rd ed.1995).

In answer to the counterclaim of the Trustee for turnover of property, Lloyd has plead the statute of frauds and the statute of limitations. The UCC statute of frauds for sales obtains except "with respect to goods for which payment has been made and accepted or which have been received and accepted." Mont.Code Ann. § 30–2–201(3)(c). With regard to the statute of limitations, actions to quiet title to an automobile based on possession of the certificate of title do not fall within any specific statute of limitations. *See* Mont.Code Ann. §§ 27–2–201 through 27–2–214. The residual statute of limitations, which provides for a five year limitation period, must therefore govern. Mont.Code Ann. § 27–2–215; *see, e.g., Peterson v. Hopkins,* 210 Mont. 429, 437, 684 P.2d 1061,-1065 (Mont.1984).

### III.

■ Applying the foregoing legal authority to the facts at bar, the Court holds that in this action to quiet title to personal property, possession of the certificate of title to the 1936 Phaeton has no bearing whatsoever to the ownership of the automobile. The Montana Supreme Court settled this question by its decision in *Safeco, supra.* In that case, a buyer had given funds for purchase and had accepted delivery of an automobile. The buyer and seller, however, never took proper steps for the transfer of the certificate of

title, and it remained in a former owner. The buyer then caused an accident with the car in which a victim died. The victim's survivors made claim against the seller's insurance company, arguing that under Mont. Code Ann. § 61–1–310, because certificate of title did not issue in the buyer, the seller still owned the vehicle for purposes of liability. The Supreme Court disagreed, explaining:

> Section 61–1–310, MCA, defines the "owner" of a motor vehicle. An "owner" under that statute includes, among others, one in whom is vested right of possession or control of a vehicle "subject to a lease, contract or other legal arrangement vesting right of possession or control." Under that definition, although the certificate of title had not transferred to him, [the buyer] was nevertheless the owner of the motor vehicle under his completed contract of purchase with [the seller].

*Safeco,* 695 P.2d at 1312. Likewise in the instant case, Towe, as the buyer under a consummated contract of sale, and Towe's successors in interest, take title over Lloyd, the mere holder of the certificate of title.

■ As to Lloyds' affirmative defenses to the Trustee's counterclaim, the statute of frauds does not apply here because payment in full for the goods has long ago "been made and accepted." Mont.Code Ann. § 30–2–201(3)(c). Regarding the statute of limitations, Lloyd first made demand for possession of the car less than a year ago. Thus, by Lloyd's own account, Towe and his successors had permission to keep the car in his collection of automobiles until that time. Consequently, the instant action to quiet title based on possession of the certificate of title did not accrue until the Towe successor's refusal to deliver possession on Lloyd's demand. This clearly falls within the five years statute of limitations of Mont.Code Ann. § 27–2–215. On the other hand, it could be argued that Lloyd bases the instant action on the bifurcation of possession of the car from possession of the certificate of title. Absent a demand for the return of the car, however, Lloyd would have no cause of action. Even if a cause of action had accrued, however, it would have done so September of 1973, when Towe took possession of the car. This would

give Lloyd until September of 1978 to bring the instant action. Thus, to the extent the statute of limitations may apply, it would bar Lloyd on the instant amended complaint rather than the Trustee on the counterclaim.

### CONCLUSION

The Court decides the factual dispute between Towe and Lloyd over whether the transfer of possession of the 1936 Ford Phaeton resulted from a sale or a loan in favor of Towe. The evidence establishes that the parties intended a sale. The parties consummated the contract in January of 1972, Towe made payment of $2,100.00 in three installments from January 18, 1972 to September 8, 1973, when Towe took delivery and ownership of the car. While the certificate of title remained with Lloyd, given Lloyds' intent to sell on transfer, mere possession of the title certificate has no relevance in this dispute. Neither the statute of frauds nor the statute of limitations as plead by Lloyd in this matter has any effect on the outcome in Towe's favor. Accordingly,

IT IS ORDERED the clerk of Court shall enter judgment in favor of Defendants William Edward Towe and Cora Florence Towe, and Intervener Gregory Luinstra, Chapter 7 Trustee, and against Plaintiff Bolton Lloyd declaring that ownership and title of the 1936 Ford Phaeton in dispute in the instant belongs with the Towe Chapter 7 estate.