In re Douglas Allen REINERTSON, Katherine Marie Reinertson, Debtors.

Don TORGENRUD, Trustee, Plaintiff,

v.

MISSOULA FEDERAL CREDIT UNION, Defendant and Third Party Plaintiff,

v.

Douglas Allen REINERTSON Katherine Marie Reinertson and Jolly Wholesale, Inc., a Montana Corporation, Third Party Defendants.

Bankruptcy No. 97–30214–7.
Adversary No. 97/00062.

United States Bankruptcy Court, D. Montana.

Aug. 27, 1998.

Don Torgenrud, St. Ignatius, MT, for plaintiff.

Richard J. Samson, Christian, Samson & Jones, P.C., Missoula, MT, for Missoula Federal Credit Union.

Harold V. Dye, Dye & Moe, P.L.L.P., Missoula, MT, for Jolly Wholesale, Inc.

C.J. Tornabene, Marsillo, Tornabene, Schuyler & McKenna, PLLC, Missoula, MT, for Douglas and Katherine Reinertson.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding Plaintiff Don Torgenrud, Chapter 7 Trustee in the above-captioned bankruptcy case, seeks avoidance of the security interest of the Defendant Missoula Federal Credit Union ("MFCU") as a preference pursuant to 11 U.S.C. § 547(b), when MFCU's predecessor-in-interest to a retail installment contract with the Debtors, Jolly Wholesale Inc. ("Jolly"), sold and delivered possession of a 1994 Dodge Intrepid (the "vehicle") to the Debtors Douglas Allen Reinertson ("Douglas") and Katherine Marie Reinertson ("Katherine") on December 24, 1996, but the purchase money security interest in the vehicle, granted as a condition of the enabling loan from MFCU, was not perfected until January 15, 1997. MFCU filed an answer and third party complaint against Jolly for damages, and against the Debtors to enforce the reaffirmation agreement with the Debtors approved in the above-captioned bankruptcy case by Order entered March 17, 1997. The Debtors filed a counterclaim against MFCU praying for rescission of the reaffirmation agreement based upon mutual mistake, and for attorney's fees and payments made by the Debtors pursuant to the reaffirmation agreement. Jolly filed a cross claim enforce the reaffirmation agreement against the Debtors.

For the reasons set forth below, Judgment shall be entered in the Plaintiff's favor avoiding MFCU's purchase money security interest as a preference and disallowing MFCU's secured claim; in Debtors' favor dismissing MFCU's and Jolly's claims to enforce the reaffirmation agreement against the Debtors

and discharging their claims against the Debtors, and vacating the Court's Order entered March 17, 1997, approving the reaffirmation agreement; and in Jolly's favor dismissing MFCU's claim against Jolly for lack of "related to" jurisdiction. This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## PROCEDURAL HISTORY

The Plaintiff filed this preference complaint on June 25, 1997. MFCU filed its answer and third party complaint on March 12, 1998, against Jolly seeking damages under their agreement for the purchase of retail installment contract (Exhibit A), and against the Debtors for enforcement of the reaffirmation agreement (Exhibit B–2). MFCU's answer admits all the allegations of the Plaintiff's complaint, including that its security interest is subject to avoidance under § 547(b) [1], except for the date the Debtors took possession. The Debtors filed their answer denying MFCU's third party complaint and asserting a counterclaim seeking rescission of the reaffirmation agreement with MFCU on the basis of mutual mistake, due to their belief that MFCU's lien was properly perfected when they entered into the reaffirmation agreement. Jolly filed its answer asserting this Court lacks jurisdiction to decide MFCU's contract claim against it, and asserting a cross claim against the Debtors to enforce the reaffirmation agreement. After the Debtors filed a reply to Jolly's claim, the Court set the matter for trial on June 3, 1998, and ordered the parties to submit exhibits and witness lists no later than three (3) business days before trial. On June 2, 1998, the day before trial, MFCU filed an amended answer admitting the Debtors took possession on December 24, 1996, but contending that its lien is not a voidable preference because MFCU did not approve the enabling loan until December 27, 1996. No answers have been filed to MFCU's amended third party complaint.

Trial of this cause was held at Missoula on July 2, 1998. The parties appeared represented by counsel. Douglas, Jack Palmer ("Palmer") (Jolly's owner), and Sandy Wells of MFCU testified, and exhibits were admitted into evidence without objection. At the close of the testimony the Court took the matter under advisement and allowed the parties ten (10) days to file briefs. Jolly and MFCU's briefs have been filed and reviewed by the Court. The Plaintiff failed to file a brief. The matter is ready for decision.

The issues are:

(1) Whether the transfer of MFCU's security interest in the vehicle perfected on January 15, 1997, constitutes a preference under § 547(b) which is avoidable by the Trustee;

(2) Whether the "enabling loan" exception of 11 U.S.C. § 547(c)(3) prevents the Trustee from avoiding this preference when MFCU's security interest was perfected more than 20 days after the Debtors received possession of the vehicle;

(3) Whether the reaffirmation agreement should be rescinded based upon mutual mistake of the parties when MFCU's security interest and status as a creditor with a claim secured by the vehicle are avoided as a preference by the Trustee, and the Debtor failed to promptly rescind, failed to return the vehicle to MFCU, and failed to make payments under the reaffirmation agreement; and

(4) Whether this Court lacks "related to" jurisdiction to decide MFCU's third party complaint against Jolly.

## FINDINGS OF FACT

The Debtors purchased the 1994 Dodge Intrepid from Jolly on December 24, 1996, for the sum of $15,495. Exhibit 1 is the retail installment contract between the Debtors and Jolly. Exhibit 1 was signed by the Debtors on December 24, 1996, and Debtors took possession of the vehicle on that date.

---

1. MFCU's answer admits paragraphs 4 and 6 of the Plaintiff's complaint, essentially confessing judgment on Plaintiff's preference claim. However, MFCU has changed its position and contends that its lien was properly perfected because its approval of the enabling loan did not take place until December 27, 1996, within 20 days of the perfection date. This allegation also, however, is contradicted by MFCU's original answer at paragraph 2, which admits that the "Retail Instalment [sic] Contract was assigned to MFCU on the same date" on which the Debtors signed the security agreement with Jolly, i.e., December 24, 1996.

Debtors granted Jolly a security interest in the vehicle pursuant to the terms of Exhibit 1. Also pursuant to Exhibit 1, Jolly assigned its rights and interests thereunder to MFCU as of December 24, 1996.

Jolly and MFCU operated under a financing agreement for the purchase of retail installment contracts (Exhibit A) dated September 2, 1996, which was in effect when the Debtors purchased the vehicle. Under Exhibit A, MFCU agreed to purchase from Jolly retail installment contracts such as Exhibit 1 for the sale of private automobiles. Exhibit A provides for debtor eligibility requirements and gives MFCU "the sole and exclusive discretion to accept or reject any proposed transaction for any reason whatsoever within a reasonable time [including that time actually necessary to obtain adequate information on the debtor] after the documents have been submitted to MFCU."

In fact, MFCU accepted Exhibit 1, but not before a delay caused by the Christmas holiday. The Debtors purchased the vehicle and took possession on December 24, 1996, in the late afternoon after MFCU had closed its doors. Palmer testified that Jolly delivered possession of the vehicle to the Debtors with the understanding that MFCU could deny the Debtors credit. However, MFCU did not deny the Debtors credit. Because of the Christmas holiday, Exhibit 1 was not delivered to MFCU until December 26, 1997, together with the Debtors' credit application (Exhibit D). MFCU accepted Debtors' application and wrote Jolly a check in the sum of $14,790 on December 27, 1996, for the assignment of Exhibit 1.

Title problems with the vehicle caused further delays before MFCU perfected its security interest in the vehicle on January 15, 1997. The vehicle title Jolly held was issued by the State of Michigan. Other dealers had owned the vehicle before Jolly, which purchased the vehicle in Florida on October 10, 1996. For purposes of perfecting MFCU's purchase money security interest in the vehicle, the State of Montana would not accept the Michigan vehicle title. The Michigan title was mailed to the Montana Department of Motor Vehicles ("DMV") at its Deer Lodge office after January 1, 1997, for the purpose of obtaining a Montana title for the vehicle. Palmer testified that the Deer Lodge DMV office was shut down for a period of three days. Jolly obtained a Montana title for the vehicle on January 13, 1997. Exhibit C. The DMV issued the Debtors a certificate of title (Exhibit 2) on February 14, 1997, showing MFCU as having a lien as of January 15, 1997.

The Debtors filed a joint voluntary Chapter 7 petition on January 29, 1997. In their Statements and Schedules they list MFCU as a creditor holding a claim secured by the vehicle. In their Statement of Intention the Debtors express their intention to retain the vehicle by reaffirming the debt with MFCU. Their Statement of Financial Affairs does not list the vehicle purchase and MFCU's perfection of its lien. MFCU filed two Proofs of Claim on February 11, 1997, one for an unsecured claim in the sum of $3,013.95, and a secured claim in the sum of $14,959.34.

The meeting of creditors was held as scheduled on March 3, 1997. The Plaintiff, who was not the original trustee appointed in this case, examined the Debtors. Richard Samson, who was the original trustee later substituted for by the Plaintiff, appeared on behalf of MFCU.

Shortly after the creditors' meeting the Debtors and MFCU executed on March 7, 1997, a reaffirmation agreement in the amount of $11,600, with monthly payments in the sum of $294. On the reaffirmation agreement, next to "Description of Security" the parties entered "1994 Dodge Intrepid". Under part 4, where the Debtors affirm their belief why the reaffirmation agreement is in their best interests, the agreement states "I need this car to get to work." Pursuant to its discretion granted pursuant to 11 U.S.C. § 524(c), the Court ordered the reaffirmation agreement approved on March 17, 1997. The Plaintiff advised the Court that he had not received a copy of the security agreement covering the vehicle until the time the reaffirmation agreement was filed.[2] A Dis-

---

**2.** The Trustee filed an application to employ the Plaintiff as attorney for the estate on April 14, 1997, for the stated purpose "in order to marshall assets of the estate and in the administra-

charge of the Debtors was entered May 7, 1997.

The Debtors made partial payments on the vehicle through June of 1997 (Exhibit C–2). The Plaintiff commenced the instant adversary proceeding by filing a preference complaint on June 25, 1997. On June 26, 1997, pursuant to Katherine's request, MFCU returned to Debtors a part payment of $53.57. Debtors have made no further payments to MFCU, although they continued to possess the vehicle with the Plaintiff's consent, so long as they maintain insurance on it. Exhibit D–2 is correspondence from Debtors' counsel to MFCU's counsel dated July 29, 1997, contending that the reaffirmation agreement was based upon a mistake of fact, i.e., that MFCU had a properly perfected security interest in the vehicle, and that MFCU should look to Jolly for damages.

### CONTENTIONS OF THE PARTIES

The Plaintiff contends that the transfer of MFCU's security interest perfected on January 15, 1997, is a preference avoidable under § 547(b).

MFCU contends the exception of § 547(c)(3) applies and that the 20 day period of § 547(c)(3)(B) should not begin to run until MFCU became a creditor on December 27, 1996, within 20 days of January 15, 1997. Because it was not a creditor on December 24, 1996, MFCU contends, it was not a creditor with an antecedent debt, as provided in § 547(b)(1) & (2), within 20 days of January 15, 1997. MFCU and Jolly both contend the Debtors should not be permitted to rescission of the reaffirmation agreement because they retained MFCU's collateral without payment since June of 1997, and thus failed to rescind promptly as required under Montana law, Mont.Code Ann. § 28–2–1713.

In addition, Jolly contends this Court lacks jurisdiction over MFCU's third party complaint against Jolly because it is not a core proceeding, and because it does not satisfy the test of having an effect on the bankrupt-

cy estate set forth in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). MFCU's post-trial brief does not address Jolly's jurisdictional argument.[3]

### DISCUSSION

This Court has jurisdiction in this preference action pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). The Plaintiff's preference action is a core proceeding pursuant to § 157(b)(2)(F).

### A. Preference under § 547(b).

■ The Plaintiff as Trustee has the burden of proving the avoidability of transfers under § 547(b). 11 U.S.C. § 547(g). This Court construed Section 547(b) in *In re Murdock,* 12 Mont.B.R. 401, 404 (Bankr.Mont. 1993):

> The Ninth Circuit recently wrote the following summary of preferences under 11 U.S.C. § 547(b):
>
> > The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the estate to all creditors 11 U.S.C. § 547(b)(1–5).
>
> *In re Food Catering & Housing, Inc.,* 971 F.2d 396, 397 (9th Cir.1992).

*See also, In re Powerine Oil Co.,* 59 F.3d 969, 972–73 (9th Cir.1995); *Womack v. Bangert (In re Bangert),* 16 Mont.B.R. 344, 349–50 (Bankr.Mont.1998); *See also, In re Walker,* 77 F.3d 322, 323 (9th Cir.1996).

Applying the above law to the facts of this case, the Court finds that the Plaintiff has satisfied his burden of proof with respect to all of the elements of § 547(b). MFCU contests the first two elements of § 547(b) in its

---

tion of this case." There is no mention in the employment application of this preference action.

**3.** MFCU's third party complaint against Jolly prays for $14,790 in damages plus MFCU's costs and attorney's fees based upon Jolly's breach of Exhibit A.

brief, arguing that it was not a creditor with an antecedent debt until December 27, 1996, which is within the 20-day time period of § 547(c)(2)(B). MFCU's argument attempts to interpose the 20-day period of § 547(c)(2)(B) upon § 547(b)(1) & (2). As explained below, MFCU's argument must fail. If Congress desired to place a time limit upon §§ 547(b)(1) & (2), it would have drafted those subsections to include a time limit as it did, for example, in subsections 547(b)(4) and (c)(3)(B).

Exhibit 1 shows that the Debtors incurred a debt to Jolly on December 24, 1996, in the amount of $13,495 after a $2,000 trade-in credit. "Debt" is defined as liability on a claim. 11 U.S.C. § 101(12). "Claim" is broadly defined as "right to payment", no matter how remote or contingent. *Matter of Southmark Corp.*, 88 F.3d 311, 317 (5th Cir. 1996) (*quoting* House and Senate Reports); § 101(5). Exhibit 1 also shows and the Court finds that Jolly assigned its claim to MFCU on December 24, 1996. MFCU argues that the sale was contingent on its approval of Debtors credit application. While that may be true, it is uncontroverted that that contingency was satisfied on December 27, 1996, when MFCU received Exhibit D and paid Jolly $14,790. Exhibit E. MFCU not having exercised its right to reject the assignment from Jolly, the Court finds that MFCU was a creditor with a claim based upon an antecedent debt owed by the Debtors within 90 days of the petition date, which was assigned to MFCU before MFCU perfected its security interest.

MFCU's perfection of its security interest in the vehicle took place on January 15, 1997. Exhibit 1. That perfection of a security interest was clearly to or for the benefit of MFCU, a creditor which filed a Proof of Claim in the Debtors' bankruptcy case asserting a secured claim on the basis of the perfection.

■ The definition of "transfer" in the Bankruptcy Code is a broad one, and one that includes the transfer of a security interest in a vehicle. *In re Walker*, 178 B.R. 497, 499 (D.Idaho 1994), *affirmed*, 77 F.3d at 324;

*Fidelity Financial Services v. Fink*, —— U.S. ——, 118 S.Ct. 651, 652, 139 L.Ed.2d 571 (1998). As this Court observed in *Murdock*, 12 Mont.B.R. at 406–07 (*quoting Barnhill v. Johnson*, 503 U.S. 393, 397, 400, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)):

Title 11 U.S.C. § 101(54) (1988 ed., Supp. II) defines "transfer" to mean

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

Section 547(e) provides further guidance on the meaning and dating of a transfer. For purposes of § 547, it provides

[ (e)(1) ](B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time [4];

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days . . . .

Our task, then, is to determine whether, under the definition of transfer provided by § 101(54), and supplemented by § 547(e), the transfer that the trustee seeks to avoid can be said to have occurred before November 20.

"What constitutes a transfer and when it is complete" is a matter of federal law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–370, 65 S.Ct. 405, 89 L.Ed. 305 (1945). This is unsurprising since, as noted above, the statute itself provides a definition of "transfer." But that definition in turn includes references to parting with "property and interest in property." In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law. *Id.*, 323 U.S. at

---

4. This section was slightly amended in the Bankruptcy Reform Act of 1994 to include the exception provided in subsection 557(c)(3)(B). *See Walker*, 77 F.3d at 324.

370, 65 S.Ct. 405; *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). Thus it is helpful to sketch briefly the rights and duties enjoyed under state law by each party to a check transaction.

\* \* \* \*

We acknowledge that § 101(54) adopts an expansive definition of transfer, one that includes "every mode . . . absolute or conditional . . . of disposing of or parting with property or with an interest in property."

*See Bangert,* 16 Mont.B.R. at 354–55.

Since § 101(54) includes voluntary and involuntary transfers, the transfer of a security interest in a motor vehicle is avoidable as a preference if the other § 547(b) requirements are met. *Murdock,* 12 Mont. B.R. at 407 (*citing 4 Collier on Bankruptcy,* ¶ 547.03[A] (15th ed.1993) with respect to the fixing of a judicial lien on a debtor's property); *see also, Walker,* 178 B.R. at 498–99, *affirmed,* 77 F.3d at 324. Since MFCU obtained by assignment from Jolly all rights under Exhibit 1 on December 24, 1996, and accepted such rights on December 27, 1996, this Court finds that the Plaintiff has satisfied his burden of proving the first two elements of § 547(b).

The third element requires a showing that the transfer be made while the Debtors were insolvent. MFCU does not contest this element. Section 547(f) provides: "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." The petition was filed January 29, 1997. The presumption of insolvency pursuant to § 547(f) reaches back 90 days, well beyond the December 24, 1996, sale date and the January 15, 1997, perfection date. Pursuant to the presumption of § 547(f), the Court finds the Plaintiff has shown that the Debtors were insolvent on

December 24, 1996, and January 15, 1997, the dates of the transfer and perfection.

The fourth element requires that the Plaintiff show that the transfer was made within 90 days of the bankruptcy filing. The Plaintiff has satisfied the fourth element. Exhibit 2 clearly shows that MFCU's its security interest in the vehicle was granted to Jolly December 24, 1996, 36 days prior to the bankruptcy filing on January 29, 1997.

The fifth element requires that the Plaintiff show that the transfer enables the creditor to receive more than such creditor would have if the transfer had not been made, the Debtors liquidated in Chapter 7, and MFCU received payment of its debt to the extent provided under Chapter 7. § 547(b)(5). If MFCU had not perfected its security interest on January 15, 1997, it would have an unperfected security interest in the vehicle. Mont. Code Ann. § 61–3–103(5). As holder of an unperfected security interest, MFCU's interest would be subordinate to the Trustee's "strong arm" powers under both Montana and federal bankruptcy law. Mont.Code Ann. § 30–9–301 [5]; 11 U.S.C. §§ 544, 1302(b), 704.

As the holder of an unperfected security interest subordinate to the Trustee, MFCU would receive a *pro rata* distribution with the other general unsecured creditors. According to the Debtors' Schedules as filed, the only nonexempt asset is the vehicle which MFCU's Proof of Claim filed February 11, 1998, valued at $14,959.34. With a perfected security interest MFCU would receive the full value of its collateral, while unsecured creditors in a Chapter 7 liquidation would receive $0. MFCU did not contest this element in its brief. Thus, Court finds the Plaintiff has clearly satisfied his burden of proving the fifth element of § 547(b)(5), i.e., that the perfection of MFCU's security interest enables it to receive more than it would as a creditor sharing a *pro rata* distribution with the general unsecured claims in a Chapter 7 case. All elements of § 547(b) having been shown, the next issue is whether the

---

**5.** Section 30–9–301(1) provides in pertinent part: [A]n unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor before the security interest is perfected. Section 30–9–301(3) defines "lien creditor" as a trustee in bankruptcy from the date of filing of the petition.

"enabling loan" exception of § 547(c)(3) applies.

### B. § 547(c)(3) "Enabling Loan" Exception.

■ Pursuant to § 547(g), MFCU has the burden of proving the nonavoidability of the transfer under subsection § 547(c)(3), which provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \*

(3) that creates a security interest in property acquired by the debtor—
(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of the property.

In *Fink* the Supreme Court explained that a trustee cannot avoid a security interest for a loan used to acquire encumbered property if it falls within the enabling loan exception of § 547(c)(3), one requirement of which is that the security interest be " 'perfected on or before 20 days *after the debtor receives possession* of such property.' 11 U.S.C. § 547(c)(3)(B)." —— U.S. at ——, 118 S.Ct. at 652 (emphasis added); *See* 5 Lawrence P. King *Collier on Bankruptcy,* ¶ 547.04[3] (15th ed.1997). MFCU does not address the four elements of § 547(c)(3)(A), which essentially requires MFCU to show it has a purchase money security interest in the vehicle, a matter not disputed in this case. Section 547(c)(3)(A)(i) applies the enabling loan exception in situations where a security interest secures new value that was given "at or *after*

the signing of the security agreement", as MFCU gave in this case three days after the Debtors received possession of the vehicle. (Emphasis added).

The main issue in this case involves the plain language of § 547(c)(3)(B). In *Fink* the Supreme Court held that "a transfer of a security interest is 'perfected' on the date that the secured party has completed the steps necessary to perfect its interest, so that a creditor may invoke the enabling loan exception only by satisfying state law perfection requirements *within the 20-day period provided by the federal statute* [§ 547(c)(3)(B) ]." *Fink,* —— U.S. at ——, 118 S.Ct. at 652 (emphasis added). The 20-day period provided by § 547(c)(3)(B) runs from the date the Debtors receive possession of the encumbered property, which in this case is December 24, 1996.

■ MFCU argues that it perfected its security interest within 20 days after it became a creditor on December 27, 1996, and thus the exception applies. MFCU argues that it did not approve the loan to Debtors until December 27, 1996, nineteen days before the perfection date, and because the contractual obligation between the Debtors and MFCU did not arise on December 24, 1996, MFCU was not a creditor with a claim on December 24, 1996, and the 20-day time limit of § 547(c)(3)(B) should not begin to run until December 27, 1996.

However, the plain language of § 547(c)(3)(B) states 20 days from the date Debtors receive possession of the vehicle, not from the date the creditor acquires the claim. MFCU's argument that the date it became a creditor governs runs afoul of the plain language of § 547(c)(3)(B). MFCU's status as a creditor which gave new value after the signing of the security agreement is addressed at § 547(c)(3)(A)(i), which is read in the conjunctive with § 547(c)(3)(B). It is uncontroverted that the Debtors took possession of the vehicle on December 24, 1996, and that MFCU's security interest in the vehicle was not perfected until January 15, 1997, 22 days after the Debtors received possession of the vehicle.[6] MFCU cites no case law which

---

6. Originally MFCU questioned the date of posses-

sion in its answer, but in its amended answer

construes § 547(c)(3)(B) to run 20 days from the date a creditor acquired a claim, rather than what it plainly states, "20 days after the debtor receives possession" of the property.

In construing statutes the Supreme Court advised in *Connecticut National Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992):

> In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. See, *e.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102–103, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *Oneale v. Thornton*, 6 Cranch 53, 68, 3 L.Ed. 150 (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); see also *Ron Pair Enterprises, supra*, at 241, 109 S.Ct. 1026.

Section 547(c)(3)(B) is unambiguous in requiring perfection 20 days after the Debtors receive possession[7] of the property. Thus, the Court's judicial inquiry is complete and the Court holds that MFCU failed to perfect its security interest within 20 days after the Debtors received possession of the vehicle. The enabling loan exception does not apply, and Judgment must be entered in favor of the Plaintiff avoiding the transfer to MFCU of its security interest as a preference.

MFCU argues that such a result is harsh and inequitable, because of the weather and holiday closures and delays caused by multiple state titles of the vehicles. The Court agrees that the unambiguous language of § 547(c)(3)(B) mandates a harsh result in this case. However, as the court observed in *Walker*, 77 F.3d at 323–24:

> It is objected that the bankrupt's estate is unfairly enriched by the proceeds of the sale of the car. The reasons for the result are the error made by Ted's, Inc. as to the identification number and the lack of a credit check that would have found the Walkers on the verge of bankruptcy. It is not unfair that these failures should work against the responsible party or its financing institution. If 10 days is too short a period, as the auto dealers believe, their remedy is with Congress, which, in fact, in 1994, enlarged the grace period to 20 days, Publ. 103–394, effective Oct. 22, 1994, codified at 11 U.S.C. § 547(c)(3)(B) and § 547(e)(2)(A), giving a wider latitude to auto dealers and financing institutions in future transactions.

Likewise, MFCU's remedy for the inadequacy of the 20-day grace period remains with Congress. As § 547(c)(3)(B) presently reads, the transfer to MFCU of its security interest in the vehicle perfected on January 15, 1997, is an avoidable preference. MFCU recognized as much in its amended answer and third party complaint filed June 2, 1998, where it states "due to Jolly's failure to timely perfect the lien of MFCU on the subject vehicle, it appears the lien is avoidable in this Adversary Proceeding by the Chapter 7 Trustee."

### C. Rescission of Reaffirmation Agreement.

Debtors' counterclaim requests relief from the reaffirmation agreement with MFCU based upon mistake of fact, i.e., that MFCU had a perfected security interest in the vehicle, and that the Debtors will not get what they bargained for under the agreement. Jolly and MFCU oppose Debtors' counterclaim, contending that the Debtors did not promptly rescind and restore the collateral to MFCU as required under state law.

---

admits the Debtors took possession on December 24, 1996.

**7.** This is doubtless due at least in part to the importance possession plays in determining own-

ership interests under state law. *See, e.g., Lloyd v. Towe*, 225 B.R. 492, 16 Mont.B.R. 260, 265–68 (Bankr.Mont.1997).

This Court has previously noted that Congress has determined an individual's right to reaffirmation of a dischargeable obligation under 11 U.S.C. § 524(c), to the exclusion of state law. *In re Hitt,* 137 B.R. 401, 404 (Bankr.Mont.1992). Thus, Jolly's and MFCU's arguments based upon Montana statutes governing rescission are inapposite. Bankruptcy law, not state law, governs. *Id.; Walker,* 77 F.3d at 323.

In *Hitt* this Court granted the debtors relief and rescinded a reaffirmation agreement after a secured creditor's lien in collateral which was the subject of the agreement was voided. 137 B.R. at 404–05. This Court wrote:

> In the present case, belated action by the Chapter 7 Trustee, to which GMAC acquiesced, caused a material change in the circumstances under which the agreement was made. Specifically, GMAC confessed its lien on the motor vehicle was void, and caused a release of the lien. The Debtor challenges the agreement on this basis, not the failure of a hearing.

> \* \* \* \*

> Further, the change in circumstances from the date of the Reaffirmation Agreement and its approval by the Court as to the secured status of GMAC weighs heavily against enforcement of the agreement. The bankruptcy court as a court of equity has the power to look through the form to the substance of a transaction in order to prevent abuses of the bankruptcy process. 11 U.S.C. § 105(a). The Ninth Circuit states that "[a]s courts of equity, bankruptcy courts 'will look through the form to the substance of any particular transactions and may contrive new remedies where those in law are inadequate ...' ". *In re Global Western Development Corp.,* 759 F.2d 724, 727 (9th Cir.1985) (*quoting In re Madeline Marie Nursing Homes,* 694 F.2d 433, 436 (6th Cir.1982)). The mistaken belief as to the GMAC's perfected security interest was unquestionably the driving force for execution of the Reaffirmation Agreement on both sides. Since later events during the course of the administration of the estate changed that

status, this Court under § 105(a) has the duty and right to correct the mistake and fashion an appropriate remedy. The payments made by the Debtor are tantamount to rent for the use of the vehicle. But the balance of the Reaffirmation Agreement cannot stand and is voided, so that the claim of GMAC is subject to the discharge Order entered by the Court.

In the instant case MFCU has not acquiesced to the avoidance of its security interest as the creditor did in *Hitt.* The result is the same, however, since this Court avoids MFCU's security interest as a preference. As in *Hitt,* the avoidance of the lien causes a material change in the circumstances under which the Debtors entered into the reaffirmation agreement. Their stated reason why the agreement was in their best interests is: "I need this car to get to work." Their mistaken belief that MFCU had a perfected security interest in the vehicle they needed was without question the driving force behind their execution of the reaffirmation agreement. They would not have executed the reaffirmation agreement if they had known MFCU did not have a perfected security interest in the vehicle they needed to get to work.

Furthermore, this Court would not have exercised its discretion under § 524(c) and approved the reaffirmation agreement on March 17, 1997, had it been informed that MFCU's security interest may have been an avoidable preference. Without MFCU having a perfected security interest in the vehicle, the reaffirmation agreement clearly would not have been in the Debtors' best interests. Thus, this Court's approval was based upon a mistake, and the Court has a right and a duty to correct the mistake and fashion an appropriate remedy power to relieve the Debtors from the Order approving the reaffirmation agreement. *See Hitt,* 137 B.R. at 405; F.R.B.P. 9024 (applying Fed. R.Civ.P. 60(b)(1) in bankruptcy cases).

Other courts have taken similar action when faced with enforcement of reaffirmation agreements for which the underlying collateral is lost. In *In re Beaton,* 211 B.R. 755, 759 n. 7 (Bankr.N.D.Ala.1997), the court noted:

[I]t is manifest that the parties must have understood that the debtors would not have reaffirmed the mortgage debts if they were not to be allowed to retain the properties. If the trustee sells the properties to Cahaba Valley Millworks, the debtors and mortgagees will have been mutually mistaken as to the subject matter which constituted the very basis of the reaffirmation agreements. As a court of equity, this Court may prevent any prejudice to the debtors that may occur if the trustee sells the properties, by allowing them to rescind their reaffirmation agreements with the mortgagees on the basis of mutual mistake. *See In re Hitt,* 137 B.R. 401, 405 (Bankr.D.Mont.1992) (debtor allowed to rescind reaffirmation agreement where debtor's mistaken belief that the secured creditor had a perfected security interest was the "driving force" for the reaffirmation agreement and security interest was avoided by trustee after reaffirmation); *Mandrell v. Ford Motor Credit Co. (In re Mandrell),* 50 B.R. 593, 595–596 (Bankr. M.D.Tenn.1985) (at time of reaffirmation, debtor and secured creditor labored under mutual mistake of fact that creditor had enforceable lien against the debtor's automobile so that debtor would be allowed to rescind reaffirmation agreement where security agreement was subsequently avoided by trustee); *cf. General Electric Credit Co. v. Eassa (In re Eassa),* 19 B.R. 153, 154 (Bankr.S.D.Ohio 1982) (creditor allowed to rescind reaffirmation where creditor's attorney provided in agreement only for principal and neglected to include finance charges and debtor must have known from disparity between amount owed prior to bankruptcy and amount of agreement that mistake had been made).

■ Without the underlying collateral, the reaffirmation agreement is clearly not in the Debtors' best interests and is a hardship on them. MFCU complains that the Debtors have had free use of the vehicle since June of 1997. However, with its security interest in the vehicle avoided as a preference, MFCU was not entitled to payments for the use of the car. Debtors' counterclaim prays for return of the payments it made to MFCU. However, in fashioning an appropriate remedy the Court deems it equitable to permit MFCU to retain the payments it received.[8] Accordingly, this Court vacates its March 17, 1997, Order approving the reaffirmation agreement, the payments the Debtors have made are tantamount to rent for the use of the vehicle, and the balance due under the agreement is void and MFCU's and Jolly's claims against the Debtors are discharged as general unsecured claims. *See Hitt,* 137 B.R. at 405.

### D. MFCU's Claim Against Jolly.

■ MFCU's third party complaint against Jolly seeks damages under Exhibit A for Jolly's failure to timely perfect MFCU's lien. Jolly contends that this Court is without jurisdiction to decide the third party complaint against it because the matter is a non-core proceeding, and does not meet the test for jurisdiction "found in the 'related to' language of 28 U.S.C. § 157(b)(1) [sic.]"[9]. MFCU's amended complaint states that its third party complaint is "both a core proceeding and a related proceeding, pursuant to 28 U.S.C. § 157." MFCU's post-trial brief fails to address Jolly's jurisdictional argument, or its third party complaint against Jolly. MFCU's third party complaint against Jolly being a simple breach of contract claim, the Court holds that it is a non-core proceeding, and any jurisdiction to decide this matter is therefore limited to "related to" jurisdiction.

The Ninth Circuit BAP explained the test for "related to" jurisdiction in *In re ACI–HDT Supply Co.,* 205 B.R. 231, 237 (9th Cir. BAP 1997):

> In addition, the causes of action fit squarely within the case law authority that indicates that they are not in fact core. " '[If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside

---

8. The Trustee, if anyone, is entitled to payments for the use of the vehicle, and requested only turnover of the vehicle, not reimbursement for its use.

9. The "related to" language is found at 28 U.S.C. § 157(a) and 28 U.S.C. § 1334(b) & (c)(2).

of bankruptcy it is not a core proceeding....]'" [*In re Eastport Associates,* 935 F.2d 1071, 1076 (9th Cir.1987)] (*quoting* [*In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987) ] ).

For similar reasons, we conclude that the state law claims do not fall within the non-core or "related to" jurisdiction of the bankruptcy court. 28 U.S.C. § 1334(c)(2). The Ninth Circuit has adopted the definition of "related to" jurisdiction expressed by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). *See In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988). Under that formulation, a civil proceeding is "related to" the bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate. The proceeding need not be against the debtor or the debtor's property. It is sufficient if the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz,* 852 F.2d at 457 (9th Cir.1988) (*quoting Pacor,* 743 F.2d at 994).

The United States Supreme Court has also recognized the definition of "related to" jurisdiction formulated in *Pacor.* The Court noted that although Congress intended the "related to" language to evidence a jurisdictional "grant of some breadth," it was not intended to be "limitless." *Celotex Corporation v. Edwards,* 514 U.S. 300, [308], 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995).

The Supreme Court further observed that "related to" jurisdiction may extend further in a reorganization under Chapter 11 than in Chapter 7. *Celotex,* 514 U.S. at 310, 115 S.Ct. 1493.

Applying the *Pacor* test to MFCU's state law contract claim against Jolly, this Court concludes that it does not fall within the non-core or "related to" jurisdiction of this Bankruptcy Court. It does not invoke a substantive right created by the federal bankruptcy law, and is one that could exist outside of bankruptcy in the state district court. *In re ACI–HDT Supply Co.,* 205 B.R. at 237. Its outcome effects only MFCU, could not conceivably have any effect on the bankruptcy estate, could not alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and does not in any way impacts upon the handling and administration of the bankruptcy estate. *Id.* MFCU's security interest is avoided and its claims against the Debtors discharged above. Therefore, its third party state law contract claim against Jolly does not fall within this Court's "related to" jurisdiction, and it shall be dismissed.

## CONCLUSIONS OF LAW

1. With the exception of MFCU's third party state law contract claim against Jolly, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. The Plaintiff's preference claim against MFCU is a core proceeding to determine to determine, avoid and recover a preference under 28 U.S.C. § 157(b)(2)(F); the Debtors' claim to rescind the reaffirmation agreement, and Jolly's and MFCU's claims to enforce the reaffirmation agreements, are core proceedings affecting the adjustment of the debtor-creditor relationship under § 157(b)(2)(O); and MFCU's third party state law contract claim against Jolly does not fall within the Court's non-core or "related to" jurisdiction.

3. The Trustee has satisfied his burden under § 547(g) of proving the avoidability of the transfer of MFCU's security interest which was perfected in the Debtors' vehicle on January 15, 1997, under § 547(b); MFCU failed to satisfy its burden under § 547(g) of proving the nonavoidability of the transfer under § 547(c)(3)(B); and MFCU's security interest is avoided as a preference.

4. This Court's Order entered March 17, 1997, approving the reaffirmation agreement between the Debtors and MFCU was entered based upon mistake; the Order is vacated, approval of the reaffirmation agreement is denied, and the balance due under the agreement is void; and MFCU's and Jolly's claims against the Debtors are discharged as general unsecured claims.

IT IS ORDERED Judgment shall be entered in favor of the Plaintiff/Trustee Don Torgenrud and against the Defendant MFCU, providing that MFCU's security interest which was perfected in the Debtors' vehicle on January 15, 1997, is avoided as a preference pursuant to § 547(b) of the Bankruptcy Code; MFCU's secured claim filed February 17, 1997, is disallowed, and MFCU is allowed a general unsecured claim in the sum of $14,959.34.

IT IS FURTHER ORDERED Judgment shall be entered in favor of the Debtors/Third Party Defendants Douglas and Katherine Reinertson dismissing MFCU's and Jolly's actions to enforce the reaffirmation agreement between Debtors and MFCU, and providing that this Court's Order entered March 17, 1997, approving the reaffirmation agreement between the Debtors and MFCU, is vacated, approval of the reaffirmation agreement is denied, and the balance due under the agreement is void; and MFCU's and Jolly's claims against the Debtors are discharged as general unsecured claims.

IT IS FURTHER ORDERED MFCU's third party complaint against Jolly based upon state contract law is dismissed for lack of "related to" jurisdiction.