### In re ACI–HDT SUPPLY COMPANY, Debtor.

Nogah BETHLAHMY, IRA; Bethlahmy Family Trust; Judith E. Bernier, IRA; Kenneth C. Schmunk; Samuel B. Lewis; IRA; Jordan Day Lewis, IRA; Gershon S. Greenblatt; Deena S. Greenblatt; Howard Mark; and Edythe Mark, Appellants,

v.

Randy S. KUHLMAN, et al., Appellees.

BAP No. SC–96–1318–AsJO.
Bankruptcy No. 95–08253–A11.
Adv. No. 95–90809–A11.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Jan. 24, 1997.

John E. Grasberger, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, CA, for Nogah Bethlahmy.

Charles F. Vihon, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., Chicago, IL, for Jordan and Samuel Lewis.

Kevin Stack, Knapp, Petersen & Clarke, Glendale, CA, for Protel, Inc.

Before: ASHLAND, JONES, and OLLASON, Bankruptcy Judges.

### OPINION

ASHLAND, Bankruptcy Judge:

#### STATEMENT OF FACTS

The Appellants herein are plaintiffs in a class action lawsuit filed in the Superior Court of San Diego County on November 21, 1995. In their First Amended Complaint, plaintiffs alleged that they were defrauded of more than $60 million as a result of their investments in Amtel Communication, Inc.'s private pay telephone "sale-leaseback program." The complaint alleges causes of action based upon violations of California statutes and common law. The appellants contend that the bankruptcy court erred in denying their motion to remand the proceeding to the state court after it was removed to the bankruptcy court by one of the named defendants, Texas Coinphone, Inc.

The debtor, Amtel Communications, Inc. ("Amtel"), is not a named defendant in the state court action, neither are any of its affiliated entities: ACI–HDT Supply Company, Amtel Communications Services, Inc., Amtel Communications Correctional Facilities, Inc., or Amtel Communications Payphones, Inc. Collectively, these companies filed Chapter 11 on August 3, 1995, and their cases were administratively consolidated. Because of the filing, the appellants' complaint does not name Amtel as a defendant and recites that it does not "presently seek monetary damages or other relief" against it.

However, a number of the class action plaintiffs have filed proofs of claim in Amtel's bankruptcy case, including Nogah Bethlahmy, Kenneth C. Schmunk, Gershon D. Greenblatt, and Howard Mark.

Instead, the plaintiffs sued a number of individual and corporate defendants. Among these were Randy S. Kuhlman, Amtel's CEO and sole shareholder, and David Darling, the company's executive vice president. Also named were Amtel's former corporate attorneys Scott Wellman and C. Samuel Blick. The manufacturers of the payphones sold to the plaintiffs were also named and include Elcotel, Inc., Protel, Inc., and Texas Coinphone, Inc. Finally, the plaintiffs named Bank of Commerce as a defendant for lending its prestige to the sale-leaseback program and soliciting persons to invest in the scheme.

The plaintiffs characterize the investment deal offered to them as a Ponzi scheme, facilitated by the named defendants. Under its sale-leaseback program, Amtel sold preassembled, freestanding private pay telephones to investors throughout the United States. Amtel did not manufacture the telephones but instead purchased the component parts from three principal manufacturers.

The sale-leaseback program was structured by way of three simultaneous agreements between Amtel and each investor. Under the first agreement, the investor purchased a pay telephone, manufactured by either Elcotel, Protel or Texas Coinphone, and rights to a site location designated by Amtel. The $3,300 purchase price covered the cost of the phone, a "location leasehold" interest, installation expenses, and shipping and handling charges. In the second agreement, the investor leased the pay telephone and site location back to Amtel. This agreement provided that Amtel would lease the unit for sixty months in exchange for a $51 per month payment during the term of the lease. During that time, Amtel promised to install, service, maintain, operate and insure the telephone unit for the investor.

The third agreement was an option to sell whereby Amtel guaranteed, at the investor's option, to repurchase the investor's pay telephone unit for the original investment amount at the end of the lease term. The monthly rent paid to the investor equated to a 17% to 19% annual return on each telephone for a total return on investment ranging from 85% to 92.59% over the five year lease period. The agreements, prepared by Wellman and Blick, were uniform for all investors.

Appellants indicate that these investments were made in violation of orders by state securities regulators who had prohibited sales of the investments within their states. Further, that they were sold based on fraudulent misrepresentations as to Amtel's solvency while concealing the fact that the suppliers of the phones retained a secret security interest in the phones that was purportedly senior to the investors' ownership rights. In fact, the court appointed examiner in the bankruptcy proceedings concluded that there were not sufficient funds from the collection of coin revenue to operate the company and pay investors their monthly rental payments. Instead, Amtel relied on funds from sales to later investors to pay prior investors.

As appellants see it, the only "winners" in the scheme were the insiders, the telephone manufacturers who supplied the phones and profited from them, and the professionals and banks who benefitted from the large fees paid to them. Their complaint alleges a variety of state law causes of action. Among these are claims based upon The Consumers Legal Remedies Act, Cal.Civ.Code §§ 1750, et seq.; California Business and Professionals Code §§ 17200, et seq.; California Business and Professions Code §§ 17500 et seq.; state common law fraud and deceit; state common law negligence and negligent misrepresentation; Cal.Corp. Code § 25110; Cal.Corp. Code § 25400; and state common law professional negligence and legal malpractice.

On December 29, 1995, Texas Coinphone, Inc. removed the state action to the bankruptcy court pursuant to 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027. The purported basis for removal was that the state action involved claims that are core proceedings under 28 U.S.C.

§ 157(b)(2)(A), (B), (H), and (O).[1] In addition, the notice of removal alleged that the plaintiffs' complaint asserted claims that were property of the estate, that it determined rights that are related to Amtel's rights, and that it sought to impose a constructive trust upon property of the estate.

The appellants filed a timely motion to remand alleging that the state causes of action did not "arise in" or "arise under" Title 11 and were not sufficiently "related to" Amtel's bankruptcy proceeding to confer jurisdiction upon the bankruptcy court. Both Protel, Inc. and Texas Coinphone, Inc. filed oppositions. At the conclusion of the hearing, the court ruled that the actions were core proceedings pursuant to § 157(b)(2). The court's order denying remand was entered on March 16, 1996 and the appellants filed a timely notice of appeal.

## ISSUES PRESENTED

1. Whether the bankruptcy court erred in determining that the state law causes of action against non-debtor third parties were core proceedings and therefore within the jurisdiction of the bankruptcy court pursuant to 28 U.S.C. § 157(b)(2) and § 1334(b).

2. Whether the state law causes of action were within the non-core but "related to" jurisdiction of the bankruptcy court.

3. Whether, if the matter was properly within its jurisdiction, the bankruptcy court failed to remand the action based upon either the discretionary or mandatory abstention provisions of 28 U.S.C. § 1334(c)(1) and (2).

## STANDARD OF REVIEW

■ We review de novo the bankruptcy court's acceptance of jurisdiction. *In re Harris Pine Mills*, 44 F.3d 1431, 1434 (9th Cir.1995); *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986). Findings of fact are reviewed under the clearly erroneous standard and questions of law are reviewed de novo. *In re Britton*, 950 F.2d 602, 604 (9th Cir.1991).

■ The issue of mandatory abstention turns upon the jurisdiction question and is therefore a question of law subject to de novo review. *In re DeLorean Motor Co.*, 155 B.R. 521, 524 (9th Cir. BAP 1993). Discretionary abstention under § 1334(c)(1) and remand on an equitable basis are reviewed for an abuse of discretion. *DeLorean*, 155 B.R. at 524; *In re Eastport Associates*, 935 F.2d 1071, 1075 (9th Cir.1991).

## DISCUSSION

Appellants contend that the bankruptcy court erred in concluding that their state law causes of action constituted matters that fell within the court's core jurisdiction pursuant to 28 U.S.C. § 157(b) and § 1334(b). Alternatively, they argue that the action does not fall within the court's non-core or "related to" jurisdiction under 28 U.S.C. § 157(c)(1) and § 1334(b). Finally, they contend that if the court did properly exercise jurisdiction over the matter, it erred in failing to remand the action to state court pursuant to either the permissive or mandatory abstention provisions of § 1334(c)(1) or (2).

■ The jurisdiction of the bankruptcy court is based upon the distinction between core and non-core bankruptcy matters. Core matters are those "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). The term "arising under" describes those proceedings involving a cause of action created or determined by a statutory provision of title 11. Whereas "arising in" refers to administrative matters that are not

---

1. 28 U.S.C. § 157(b)(2) provides: Core proceedings include, but are not limited to—

    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful

    death claims against the estate for purposes of distribution in a case under title 11;

    .    .    .    .    .

    (H) proceedings to determine, avoid, or recover fraudulent conveyances;

    .    .    .    .    .

    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

based on any right expressly created by title 11 but would nevertheless have no existence outside of the bankruptcy case. *In re Eastport Associates,* 935 F.2d 1071, 1076 (9th Cir.1991) (citing *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987)).

■ Section 157(b)(2) contains a list of matters that fall within the core jurisdiction of the court. This list is a nonexhaustive one. Nonetheless, it has been stated that proceedings that do not invoke substantive rights created by bankruptcy law and that could exist outside of bankruptcy are not core proceedings, although they may fall within the "otherwise related to" jurisdiction of the court. *Eastport Associates,* 935 F.2d at 1076 (citing *Wood,* 825 F.2d at 97).

In their state court complaint, the appellants seek several forms of relief. The relief sought is broad. However, the causes of action are based solely on state law. The debtor is not named as a defendant in the actions although the complaint contains several allegations as to the debtor's conduct.

In addition to seeking monetary damages against the named defendants, the complaint seeks the disgorgement of funds earned by professionals and manufacturers as a result of their alleged unlawful and fraudulent business acts and misleading advertising. Alternatively, it seeks imposition of a constructive trust on these funds. The complaint also seeks an order enjoining the defendants (including officers and directors of Amtel, its stockholders, and legal counsel) from engaging in the alleged misconduct, which includes false advertising and unfair business practices.

At the hearing on the motion to remand, the appellants attempted to characterize the complaint as one seeking only monetary damages against non-debtor parties. They argued · that to the extent the complaint sought a cease and desist order, allegedly a typical remedy under state law, this was sought only against non-debtor defendants, not against Amtel. In any event, the debtor was purportedly no longer selling the payphones.

Alternatively, the appellants requested leave of court to file a second amended complaint that would better plead their position. Although a second amended complaint was eventually filed, the bankruptcy court refused to defer ruling on the remand motion until the filing took place. Instead, it signaled its intent to rule on the complaint before it, not a hypothetical, as yet unfiled, complaint.

This panel has since declined to allow appellants to supplement the record with their subsequently filed second amended complaint as that document was not before the bankruptcy court when it rendered its decision. As a consequence, the appellants have reiterated their position during appellate arguments. In essence, their position is that the complaint seeks only monetary damages against non-debtor defendants, and that no ownership or priority rights are being litigated in the state court action that would implicate the debtor's relationship with its creditors.

In contrast, the appellees argue that the state claims fall within various of the enumerated categories under § 157(b)(2), including (A), (B), (H), or (O). If this is the case, core jurisdiction would be conferred on the bankruptcy court. The bankruptcy court believed the proceeding was core, in part, because there existed a "strong possibility" of inconsistent results between determinations necessary in the bankruptcy case and those essential to the state court action. At the same time, it was concerned that the complaint appeared to seek a cease and desist order against the debtor's business operations and sought imposition of a constructive trust on assets the court believed might be subject to fraudulent conveyance actions in bankruptcy.

It would seem that if core jurisdiction is to be found in this instance it would necessarily have to fall under § 157(b)(2)(A) or (O). The facts do not support a determination that the aforementioned state causes of action involve the allowance or disallowance of claims against the estate pursuant to § 157(b)(2)(B) or proceedings to recover fraudulent conveyances under § 157(b)(2)(H). Rather, they must fall within the catch-all provisions of § 157(b)(2) if at all.

Several cases are instructive in leading us to conclude that the bankruptcy court erred in finding core jurisdiction over the state class action lawsuit. In *In re Cinematronics*, 916 F.2d 1444 (9th Cir.1990), plaintiff ESR sued the debtor in state court alleging that the debtor was marketing a product using confidential information obtained from the plaintiff. The state court issued a temporary restraining order against Cinematronics and the trustee filed a complaint in bankruptcy court alleging violations of the automatic stay. ESR answered and asserted counterclaims against the trustee and third-party claims against Cinematronics' president for breach of contract, fraud, and unfair business competition, among others.

On appeal, the Ninth Circuit concluded that ESR's third-party claims were non-core. *Cinematronics*, 916 F.2d at 1450. In doing so, it relied on its prior decision in *In re Castlerock*, 781 F.2d 159 (9th Cir.1986). There, the court held that "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)." *Castlerock*, 781 F.2d at 162.

Similarly, in the *Cinematronics* decision, the court noted that the claims were against a non-debtor and did not fit within one of the enumerated categories of core proceedings. It found "no clear expression of congressional intent to include within the catch-all categories ... state claims that relate to the bankruptcy proceeding but that exist against a non-debtor." *Cinematronics*, 916 F.2d at 1450. As a result, the court held that a state law claim against a *non-debtor* in his individual capacity that did not fall squarely within § 157(b)(2)(B)–(N) could not be a core proceeding merely by virtue of the catch-all provisions of § 157(b)(2)(A) or (O). *Cinematronics*, 916 F.2d at 1450 (emphasis added). *See also In re Harris Pine Mills*, 44 F.3d 1431, 1437 (9th Cir.1995) (discussing *Cinematronics*, 916 F.2d at 1450). Therefore, the court concluded that the third-party claims were non-core because they were against the president in his individual capacity and did

not directly affect the estate. *Cinematronics*, 916 F.2d at 1450.

In *In re DeLorean Motor Co.*, the panel considered whether a malicious prosecution action filed in state court against the trustee's attorneys for their conduct in pursuing fraudulent conveyance actions constituted a core proceeding. The panel reiterated that a proceeding "will not be considered a core matter, even if it falls within the literal language of sections 157(b)(2)(A) or 157(b)(2)(O), if it is a state law claim that could exist outside of bankruptcy and is not *inextricably bound* to the claims allowance process or a right created by the Bankruptcy Code." *DeLorean*, 155 B.R. 521, 525 (9th Cir. BAP 1993) (emphasis added). The panel concluded that the lawsuit was the functional equivalent of a suit against the trustee, and was inextricably tied to determination of administrative claims and proper administration of the estate. As such, it was deemed a core proceeding, presumably under § 157(b)(2)(A).

The bankruptcy court used language similar to that in *DeLorean* when it commented at the remand hearing that the issues in the complaint were "inextricably intertwined" with those in the bankruptcy case. Although the "inextricably bound" language in *DeLorean* is interesting, that case is factually different from the issue at hand. The lawsuit here, although against the debtor's attorneys, does not deal with postpetition conduct, and cannot be said to be the functional equivalent of an action against the trustee.

Interestingly enough, the Ninth Circuit's decision in *Harris Pine Mills*, 44 F.3d 1431, 1438 (9th Cir.1995), seems to have adopted the "inextricably intertwined" language used by the panel in *DeLorean*. *Harris Pine Mills* involved a state court action for fraud, negligence, and negligent misrepresentation against the trustee and its agents with respect to sale of estate property. The court reviewed case authority and treatises discussing the jurisdiction conferred under § 157(b)(2)(A) and (O). Ultimately, it concluded that "postpetition state law claims asserted against the bankruptcy trustee and his agents for conduct *inextricably intertwined* with the trustee's sale of property

belonging to the bankruptcy estate involved a core proceeding subject to federal jurisdiction." 44 F.3d at 1438 (emphasis added).

Again, *Harris Pine Mills* is factually distinct from the situation presented in this appeal. The proceedings before us do not arise from postpetition conduct such as the trustee's or his attorneys' sale of property of the estate. As such, it is difficult to discern whether the concept of "inextricably intertwined" has validity beyond the factual scenario presented in that case or in *DeLorean*.

■ We conclude that the bankruptcy court erred when it determined that the state law claims were within the core jurisdiction of the court. There has been no showing that the claims are so intertwined with the bankruptcy issues presented as to draw them within the catch-all provisions of § 157(b)(2)(A) or (O). Moreover, the situation presented here is factually unlike the scenarios presented in *DeLorean* and *Harris Pine Mills*. There, the actions were against the trustees and their attorneys for conduct arising out of administering the estate. Here, the actions against non-debtor parties are for conduct arising prepetition.

■ In addition, the causes of action fit squarely within the case law authority that indicates that they are not in fact core. " '[If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding....' " *Eastport Associates,* 935 F.2d at 1076 (quoting *Wood,* 825 F.2d 90, 97 (5th Cir.1987).

■ For similar reasons, we conclude that the state law claims do not fall within the non-core or "related to" jurisdiction of the bankruptcy court. 28 U.S.C. § 1334(c)(2). The Ninth Circuit has adopted the definition of "related to" jurisdiction expressed by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). *See In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988). Under that formulation, a civil proceeding is "related to" the bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate. The proceeding need not be against the debtor or the debtor's property. It is sufficient if the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz,* 852 F.2d at 457 (9th Cir.1988) (quoting *Pacor,* 743 F.2d at 994).

The United States Supreme Court has also recognized the definition of "related to" jurisdiction formulated in *Pacor.* The Court noted that although Congress intended the "related to" language to evidence a jurisdictional "grant of some breadth," it was not intended to be "limitless." *Celotex Corporation v. Edwards,* 514 U.S. 300, ——, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995).

In *Pacor,* the plaintiff Higgins brought a products liability suit in state court against Pacor, who in turn filed a third party complaint impleading the Johns–Manville Corporation. Johns–Manville later filed bankruptcy. Shortly thereafter the state court severed the third-party action (Pacor against Johns–Manville) from plaintiff's action against Pacor. Pacor then filed a removal of the Higgins–Pacor lawsuit to the bankruptcy court alleging that the matter was "related to" Johns–Manville's bankruptcy. *Pacor,* 743 F.2d 984, 986 (1984).

On appeal, the Third Circuit Court of Appeals concluded that the Higgins–Pacor action did not fall within the "related to" jurisdiction of the bankruptcy court and affirmed the District Court's remand of the matter to state court.

> At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel.

*Pacor,* 743 F.2d at 995.

The situation presented in this instance is even more attenuated than the facts presented in *Pacor.* To begin with, no evidentiary record was developed to indicate what effect the state law claims might have on Amtel's

bankruptcy estate. The debtor is not named as a defendant in the state action. The claims are based solely in state law and seek redress for conduct of the defendants for which they are jointly and severally liable. Most importantly, this is not a situation where the appellants are attempting to usurp causes of action that a trustee would have.

 The bankruptcy court is left with the responsibility of determining the parties' relative ownership interests in the telephones and their priority for recovery on their bankruptcy claims. Appellants' state law action seeks recovery of damages against the defendants for their conduct in promoting the sale-leaseback program. As Amtel is not a party to this action, it would not be bound by the outcome under principles of res judicata and collateral estoppel.

In sum, we conclude that there is no "related to" jurisdiction in this instance. Nonetheless, our decision does not in any way lift the automatic stay in effect in Amtel's bankruptcy proceeding. As such, the appellants can take no actions inconsistent with the stay or proceed with any claims that are properly brought by the trustee without first seeking relief from the bankruptcy court.

### CONCLUSION

For the foregoing reasons, we conclude that the bankruptcy court lacks subject matter jurisdiction over the appellants' state law claims against the non-debtor defendants. Therefore, the court's order determining that core jurisdiction existed is reversed and the matter is hereby ordered remanded to the state court for further adjudication.