FILED

NOT FOR PUBLICATION

APR 15 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   CC-12-1479-TaPaKi
                                          )
MERUELO MADDUX PROPERTIES,                )    Bk. No.   09-13356-VK
INC.,                                     )
                                          )
                Reorganized Debtor.       )
_____)
                                          )
EVOQ PROPERTIES, INC., f/k/a              )
MERUELO MADDUX PROPERTIES,                )
INC.,                                     )
                                          )
                Appellant,                )
                                          )
v.                                        )    M E M O R A N D U M*
                                          )
JOHN CHARLES MADDUX,                      )
                                          )
                Appellee.                 )
_____)

Submitted and Argued on March 22, 2013
at Pasadena, California

Filed - April 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding
_____

Appearances:     Christopher E. Prince of Lesnick Prince & Pappas
                 LLP for Appellant Evoq Properties, Inc., formerly
                 known as Meruelo Maddux Properties, Inc.; David
                 Shemano of Peitzman Weg LLP for Appellee John
                 Charles Maddux
                 _____

Before:  TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.
_____

     * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

1

**INTRODUCTION**

Appellant EVOQ Properties, Inc., formerly known as Meruelo Maddux Properties, Inc. ("MMPI"), is the reorganized debtor in jointly administered chapter 11 cases[1] ("Reorganized Debtor"). It appeals from a bankruptcy court order allowing John Charles Maddux ("Maddux") to pursue enforcement of the advancement provisions of a pre-petition indemnity agreement ("Indemnity Agreement") in a non-bankruptcy forum. Maddux seeks advancement of defense costs in connection with post-confirmation litigation based on allegations of Maddux's pre- and post-petition wrongful conduct as an officer and director of MMPI.[2] Having first concluded that appellate jurisdiction is proper, we AFFIRM.

**PROCEDURAL AND FACTUAL BACKGROUND**

On or about March 26, 2009, MMPI and fifty-three related entities filed voluntary petitions under chapter 11. On

---

[1] We exercised our discretion and independently reviewed certain imaged documents from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). In so doing, we determined that on April 7, 2009, the bankruptcy court ordered joint administration of MMPI's bankruptcy case with 53 related cases under MMPI's case no. 09-13356 ("Joint Administration Order").

[2] Procedurally, the confusing record required that we analyze whether the order on appeal is final or interlocutory. By order filed March 6, 2013, we required that the parties further brief finality issues in advance of oral argument and instructed the parties to be prepared to argue finality at oral argument.

2

September 23, 2009, Maddux[3] filed proofs of claim, each in the amount of $8.5 million, in the MMPI case and in another affiliated case.[4] Maddux also filed a proof of claim in a third affiliated case, but in the amount of $8 million. Maddux attached an identical 5-page "Addendum" to each proof of claim that describes the bases for the aggregated claim amount, including: a contribution agreement; the Indemnity Agreement; subrogation; and an employment agreement. The Addendum contains a "Reservation of Rights" that includes a statement that the documents supporting the claims "are too voluminous to attach," along with an offer to make copies available upon appropriate request (hereinafter, we refer to Maddux's filed proofs of claim collectively as the "Proofs of Claim"). Maddux never attached copies of the referenced documents to the Proofs of Claim.

On June 24, 2011, after trial on competing proposed plans, the bankruptcy court entered an order confirming the plan of reorganization (the "Charlestown Plan") proposed by two of MMPI's

---

[3] Maddux, individually and as trustee of the John Charles Maddux Trust U/D/T ("Trust"), and Sunstone Bella Vista, LLC ("Sunstone") each filed a proof of claim in the amount of $8.5 million in two of the affiliated cases. As only Maddux, individually, appealed from the order at issue here, we do not further discuss the Trust or Sunstone.

[4] The Joint Administration Order directed claimants to file proofs of claim in the case directly related to their claims and to use the caption and case number for that case when so doing. It also, however, directed use of the MMPI case number, caption, and docket in connection with all other filings in the administratively consolidated cases.

minority shareholders (the "Plan Proponents").[5] Very generally stated, the Charlestown Plan provided for payment in full to holders of undisputed unsecured claims on the Effective Date[6] and for payment to holders of secured claims either by surrender of collateral or through payment over a four-year period. In addition, the Charlestown Plan provides for retention of: "All claims against the Debtors' Insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breach of fiduciary duty or negligence." Charlestown Plan at 116:8-10.

After confirmation, the Reorganized Debtor formed a new board of directors, and, at some point not clear on this record, Maddux lost his positions as an officer and director.

**Claim Objection.**

On January 23, 2012, the Reorganized Debtor filed an objection to and Motion for Disallowance of the Proofs of Claim, seeking disallowance to the extent the claims were based on the contribution agreement and the Indemnity Agreement (the

---

[5] The parties did not include in the record on appeal the final version of the confirmed Charlestown Plan. The Reorganized Debtor, however, included a copy of the Order Confirming the Charlestown Plan ("Confirmation Order"). Exhibit 1 to the Confirmation Order refers to docket number 3223, which is the Notice of Filing of Third Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010. We exercised our discretion to independently review the Charlestown Plan. Fegert, 887 F.2d at 957-58.

[6] The Amended Notice of Entry of Confirmation Order, Occurrence of Effective Date and Bar Date for Administrative Claims, which we located on the bankruptcy court docket at #3317, gives notice that the Effective Date occurred on July 25, 2011.

4

"Disallowance Motion").[7]  Maddux filed a Notice of Qualified Non-Objection, but expressly reserved his right to seek reconsideration for cause under 11 U.S.C. § 502(j)[8] if the Reorganized Debtor later asserted claims against him where he had a contractual right to contribution or indemnity.  After hearing, the bankruptcy court entered an order granting the Disallowance Motion without prejudice to Maddux's rights under section 502(j) ("Disallowance Order").

**Reconsideration Motion.**

The same day that the bankruptcy court entered the Disallowance Order, the Reorganized Debtor sued Maddux and others in the California Superior Court ("State Court Action").  In response, Maddux filed a Motion for Reconsideration of the Disallowance Order based on section 502(j) and Rules 3008 and 9023 ("Reconsideration Motion").  Maddux stated therein that: "Maddux is not requesting the Court to adjudicate the validity of his indemnity Claims but is simply asking the Court to reconsider its order *disallowing* those Claims."  Reconsideration Motion at 8:25-27 (emphasis in original).  He attached a copy of the Indemnity Agreement as Exhibit A to the Reconsideration Motion.

---

[7]  In the Objection, the Reorganized Debtor mentions that it had already objected to certain "employment related wage claims of Maddux" [presumably including those contained in the filed proofs of claim].  Neither party, however, addresses the legal implications and effect, if any, of this apparent piecemeal manner of litigating objections to the Proofs of Claim.

[8]  Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

5

The Reorganized Debtor opposed the Reconsideration Motion, primarily on the grounds that Maddux's claim for indemnity remained contingent. The Reorganized Debtor argued that unless and until Maddux prevailed in the State Court Action, he could not establish a right to indemnification.

In his reply ("Reply"), Maddux argued that the Indemnity Agreement provided him with a current, non-contingent, liquidated right to enforce his claim for advancement of attorney's fees that he incurred in defending against the State Court Action ("Advancement Claim"). He also argued that the bankruptcy court should "abstain from adjudicating the pending claim objection and instead permit Maddux to seek relief in Delaware concerning his entitlement to advancement of expenses and other indemnity rights." Reply at 5:1-4. Maddux based his request for abstention on the governing law provision in the Indemnity Agreement, the bankruptcy court's limited post-confirmation jurisdiction, and the alleged lack of effect on MMPI's 100% payout estate. Thus, Maddux requested that the bankruptcy court not only vacate the Disallowance Order, but also exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from adjudicating the Advancement Claim and all other Indemnity Agreement-based claims.

The Reorganized Debtor sought authorization from the bankruptcy court on an emergency basis to file a sur-reply ("Sur-reply"); the bankruptcy court granted this request. In the Sur-reply, the Reorganized Debtor argued that Maddux improperly included new substantive legal arguments in the Reply; inappropriately included the separate Advancement Claim as part

of Maddux's claim for indemnification; and inaccurately argued that the determination would have no effect on the Reorganized Debtor such that a Delaware court should be allowed to determine whether Maddux's newly asserted Advancement Claim was timely, time barred, discharged, or otherwise not allowable as a matter of bankruptcy law. The Reorganized Debtor finally argued that the Charlestown Plan preserved jurisdiction in the bankruptcy court over all such issues, and, in any event, that the Charlestown Plan discharged the alleged Advancement Claim.

At the initial hearing on the Reconsideration Motion, the bankruptcy court addressed indemnification, continued the hearing as to the Advancement Claim, and allowed Maddux to submit an order pending final resolution. The bankruptcy court entered an order after the hearing granting the Reconsideration Motion in part (the "First Order"). In the First Order, the bankruptcy court initially vacated the Disallowance Order as to claims by Maddux for "indemnity, contribution or reimbursement, including a claim or right to advancement of expenses arising from or relating to" the State Court Action, defined therein as an "Indemnity Claim." First Order (Bk. Dkt. #3800) at 3:4-7. Second, the bankruptcy court abstained therein from "all matters and proceedings relating to any dispute concerning an Indemnity Claim, including allowance or disallowance . . . pursuant to section 502(b), (c), or (e). . . ." Id. at 3:11-14. Third, and specifically notwithstanding its abstention, the First Order provided that: "this Court shall not abstain and shall retain jurisdiction to determine whether any claim or right of Maddux to advancement of expenses pursuant to paragraph 5 of the Indemnity

7

Agreement or otherwise is time-barred and discharged pursuant to any bar date order entered in the Debtors' bankruptcy cases or the [Charlestown Plan]." Id. at 3:17-21. Finally, the First Order established deadlines for additional briefing regarding the Advancement Claim.

**Advancement Claim.**

At the hearing on the Advancement Claim and in its briefing, the Reorganized Debtor argued that the Advancement Claim was an entirely new claim, not merely a new argument. It asserted that Maddux failed to timely assert the Advancement Claim because Maddux did not attach a copy of the Indemnity Agreement to the Proofs of Claim and did not specifically identify the Advancement Claim in the Addendum to the Proofs of Claim. Relying on Delaware case authority that characterized a claim for advancement of expenses as a claim for relief separate from a claim for indemnification, Majkowski v. Am. Imaging Mgmt. Servs., LLC, 913 A.2d 572, 586-87 (Del. Ch. 2006), the Reorganized Debtor argued that Maddux's assertion of a contingent claim for indemnity was insufficient to assert a claim for advancement of expenses. Further, the Reorganized Debtor argued that Maddux should not be allowed to amend the Proofs of Claim to add the Advancement Claim after the bar date, post-confirmation, and after disallowance of the claim, and that Maddux had not and could not satisfy the standards for amendment. The Reorganized Debtor argued that to force it to advance the costs of Maddux's defense represented a huge and present liability risk to the estate.

Maddux argued that his right to advancement was based upon

8

paragraph 5 of the Indemnity Agreement. He argued that he satisfied all requirements of Rule 3001 and preserved all claims based on the Indemnity Agreement when he referred to it in the Addendum. Alternatively, Maddux argued that he should be allowed to amend the Proofs of Claim, if deemed necessary by the bankruptcy court.

The bankruptcy court found that the Advancement Claim was not time barred. It reasoned that advancement was a contractual right under the Indemnity Agreement that was incorporated into the Proofs of Claim by reference to the Indemnity Agreement in the Addendum. The bankruptcy court rejected the argument that the Advancement Claim was time barred just "because the word 'advancement' wasn't in the proof of claim." Hr'g Tr. (July 30, 2012) at 54:1-3. The bankruptcy court acknowledged that indemnification and advancement are separate rights, but noted that "they're both provided in the agreement." Id. at 55:3-4. And, near the conclusion of the hearing, the bankruptcy court clarified the extent of its relief and stated that "it's just now – the advancement in particular is also included . . . ." Id. at 54:12-19. The bankruptcy court then stated that "this Court isn't going to be deciding the issues about advancement any more than it's deciding issues about indemnification." Id. at 54:23-25.

The order entered after the hearing (the "Second Order"), stated that the Advancement Claim was not time barred, and "in accordance with the Reconsideration Order, Maddux and the Reorganized Debtors may seek adjudication of any dispute concerning Maddux's claim for advancement of expenses with

9

respect to the Indemnity Claim in any forum or venue permitted under applicable non-bankruptcy law." Second Order (Bk. Dkt. #3847) at 3:5-8. The Reorganized Debtor filed a timely Notice of Appeal from the Second Order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(B) & (O).

We have jurisdiction under 28 U.S.C. § 158(a) and (b) to hear appeals from final judgments, orders, and decrees; and with leave of the Panel, from interlocutory orders and decrees of bankruptcy judges. The burden of demonstrating jurisdiction lies with the party asserting it. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994). Here, the Reorganized Debtor failed to include a statement of the basis for appellate jurisdiction in its Opening Brief and we required additional briefing in advance of oral argument regarding finality.

**Finality of the Second Order.**

The Reorganized Debtor appeals from the Second Order. As stated above, in the Second Order the bankruptcy court found that the Advancement Claim was not time barred. Ordinarily, an order regarding the timeliness of a proof of claim is not a final order as allowance or disallowance of the proof of claim remains to be determined. New Life Health Ctr. Co. v. IRS (In re New Life Health Ctr. Co.), 102 F.3d 428 (9th Cir. 1996). Here, however, the bankruptcy court also abstained from further consideration of the Advancement Claim and instructed that the parties should have the merits of the Advancement Claim determined, along with all other claims for indemnification, in a non-bankruptcy forum. This

10

decision to abstain is a final order as "its impact is to send [the claim] effectively out of court." Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1383 (9th Cir. 1994). Therefore, we have jurisdiction to hear this appeal as to the Second Order pursuant to 28 U.S.C. § 158.

**Scope of our review of issues.**

Maddux argues that we lack jurisdiction to review the abstention and reconsideration decisions. He bases this argument on his assertions that the First Order was final as to these two issues, even if not final as to the timeliness of the Advancement Claim, and that the Reorganized Debtor failed to timely seek appeal from the First Order.

The First Order, through which the bankruptcy court vacated disallowance and abstained as to indemnification, specifically reserved ruling as to the Advancement Claim and was clearly interlocutory. Ordinarily abstention would render an order final, but the carve out as to abstention with respect to the Advancement Claim renders the First Order not final. The bankruptcy court did not allow any particular claim and the First Order did not resolve all issues related to the interaction between the Indemnification Agreement and the State Court Action. Even under the flexible pragmatic approach to finality of bankruptcy court orders in the Ninth Circuit, the First Order was not final. See In re Frontier Props., Inc., 979 F.2d 1358, 1363 (9th Cir. 1992) ("a bankruptcy court order is appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed."). Entry of the Second Order, however, resolved all

11

issues related to the Advancement Claim, allowed the entire dispute regarding the Indemnity Agreement to be decided by the state court, and resulted in the First Order becoming final. See Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1114 (9th Cir. 2000).

The Reorganized Debtor did not directly appeal from the First Order; however, it included in its Statement of Issues on Appeal: "Whether the Bankruptcy Court erred in granting John Charles Maddux's (and affiliated entities') motion for reconsideration with respect to the court's prior order disallowing his purported claim for advancement of expenses." Stmt. of Issues, Bk. Dkt. #3868 at 1:8-10. By inclusion of this issue related to the earlier order that became reviewable based on the Second Order, we conclude that the Reorganized Debtor adequately preserved this issue.

"[A]n appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment." Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364, 1363 (9th Cir. 1981) ("the rule is well settled that a mistake in designating the judgment appealed from should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake.") Here, Maddux was not misled by the alleged mistake, as the issue raised by the First Order has been fully briefed. Moreover, the Second Order necessarily involved the bankruptcy court's reconsideration of the Disallowance Order. The propriety of its consideration of whether the Advancement Claim constituted a part of the Proofs of

12

Claim, therefore, is properly before this Panel.

Almost in passing, Maddux argues on appeal that the Reorganized Debtor waived the abstention issue pursuant to Rule 8006. Rule 8006, however, does not limit a party's appeal from a bankruptcy court's judgment. See Gertsch v. Johnson & Johnson, Fin. Corp., 237 B.R. 160, 166 (9th Cir. BAP 1999). We may consider arguments not specified in the Rule 8006 statement of issues "when a complete understanding of the case can be discerned from the briefs and the record." Id. Here, we have a complete understanding of the case from the briefs and the record, including the key role and timing of the bankruptcy court's abstention ruling. And, Maddux has not identified any prejudice from the Reorganized Debtor's failure to confine its arguments to the issues stated in the Statement of Issues on Appeal. The Second Order contained the bankruptcy court's decision to abstain as to the Advancement Claim and review of the abstention decision is appropriately within the scope of our review here.

**ISSUES**

1.   Did the bankruptcy court abuse its discretion when it reconsidered the Disallowance Order?

2.   Did the bankruptcy court err when it found that the Advancement Claim was not time-barred and discharged?

3.   Did the bankruptcy court abuse its discretion when it abstained from further consideration of the Advancement Claim?

**STANDARD OF REVIEW**

We review the bankruptcy court's legal conclusions de novo, and its findings of fact for clear error. See Allen v. US Bank,

13

NA (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012) ["An order overruling a claim objection can raise legal issues (such as the proper construction of statutes and rules) which we review de novo, as well as factual issues (such as whether the facts establish compliance with particular statutes or rules), which we review for clear error."]. A bankruptcy court's grant of a motion for reconsideration is reviewed for abuse of discretion. Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1073 (9th Cir. 2000).

We review the bankruptcy court's contract interpretation de novo. Simpson v. Burkart (In re Simpson), 366 B.R. 64, 70-71 (9th Cir. BAP 2007). The bankruptcy court's interpretation of the confirmed plan is an interpretation of its own order, which we review under the abuse of discretion standard. JCB, Inc. v. Union Planters Bank, N.A., 539 F.3d 862, 869 (8th Cir. 2008); and see Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011) ("We owe substantial deference to the bankruptcy court's interpretation of its own orders . . . .") (citation omitted). Likewise, we review the bankruptcy court's decision to abstain for an abuse of discretion. Bethlahmy v. Kuhlman (In re ACI-HDT Supply Co.), 205 B.R. 231, 234 (9th Cir. BAP 1997).

**DISCUSSION**

**A.    The bankruptcy court did not abuse its discretion by considering the Advancement Claim in the context of reconsideration of the Disallowance Order and then abstaining from a consideration of the merits.**

The Reorganized Debtor argues that the bankruptcy court abused its discretion by improperly considering Maddux's newly asserted claim, based on a separate legal right for advancement,

14

in connection with reconsideration of the Disallowance Claim. It also argues that Maddux's request made in the Reconsideration Motion that the bankruptcy court abstain was not properly before the bankruptcy court. We disagree.

The bankruptcy court generally has discretion in deciding whether to reconsider its prior orders. Elias v. U.S. Trustee (In re Elias), 188 F.3d 1160, 1161 (9th Cir. 1999). At oral argument in this appeal, the Reorganized Debtor argued that the Disallowance Motion required Maddux to clarify the grounds for all possible claims, notwithstanding his concession regarding the propriety of disallowance based on the then-contingent nature of the claims. The Reorganized Debtor then asserted that Maddux cannot now assert the Advancement Claim as he did not specifically identify the potential claim for advancement of expenses in connection with his response to the Disallowance Motion. The Reorganized Debtor closed this argument with the assertion that the bankruptcy court, thus, improperly vacated the Disallowance Order when it did so based on an allegedly new and previously unstated Advancement Claim.

The Disallowance Order, however, was not based on the merits as to the validity of the indemnification rights or Advancement Claim; Maddux conceded the contingent status of these issues and the bankruptcy court disallowed the claims based only on their contingent status. It was entered without prejudice to Maddux's rights and clearly contemplated possible future reconsideration. And, as discussed below, the bankruptcy court found that the Advancement Claim is not a new claim introduced first in Maddux's reply papers. Rather it is part and parcel of the

15

indemnification claim, triggered specifically by the Reorganized Debtor's filing of the State Court Action, and an appropriately cited new circumstance that supported reconsideration.

Having reconsidered and vacated the Disallowance Order, the bankruptcy court's decision to consider abstention also was appropriate. A bankruptcy court has the power to permissively abstain from hearing any matter, sua sponte. Gober v. Terra + Corp. (In re Gober), 100 F.3d 1195, 1207 (5th Cir. 1996). As long as the parties have an opportunity to be heard, the decision to abstain is left up to the sound discretion of the bankruptcy court. Underwood v. United Student Aid Funds, Inc. (In re Underwood), 299 B.R. 471, 476 (Bankr. S.D. Ohio 2003). Here, the bankruptcy court allowed the Reorganized Debtor to be heard, by allowing it to file its Sur-reply, which addressed abstention, and to argue at the scheduled hearing. We find no abuse of the bankruptcy court's discretion in its decision to consider abstention in connection with the Reconsideration Motion.

**B. The Advancement Claim was not barred.**

**1. The Advancement Claim is a subpart of Maddux's Indemnity Agreement-based claim.**

The Reorganized Debtor, in essence, argues that Maddux was required to file a separate proof of claim for advancement because, under Delaware state law, advancement is a right separate from a right to indemnity. The bankruptcy court concluded that this argument was unavailing, and we agree.

The Indemnity Agreement, by its terms, is governed by Delaware law. Under Delaware law, a corporation may pay the "[e]xpenses (including attorneys' fees) incurred by an officer or

16

director defending any civil, criminal, administrative or investigative action, suit or proceeding . . . in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this Section." Del. Gen'l Corp. Law § 145(e). This advancement provision is permissive. See Homestore, Inc. v. Tafeen, 888 A.2d 204, 212 (Del. 2005).

The Indemnity Agreement here provides the following:

> 5. Advancement of Expenses. In the event of any action, suit or proceeding against Indemnitee which may give rise to a right of indemnification from the Company pursuant to this Agreement, within five days following written request to the Company by the Indemnitee, the Company shall advance to Indemnitee amounts to cover expenses incurred by Indemnitee in defending the action, suit or proceeding whether prior to or after final disposition of such action, suit or proceeding (unless there has been a final determination that Indemnitee is not entitled to indemnification for these expenses) upon receipt of (i) an undertaking by or on behalf of the Indemnitee to repay the amount advanced in the event that it shall be ultimately determined in accordance with Section 3 of this Agreement that such Indemnitee is not entitled to indemnification by the Company, and (ii) satisfactory evidence and documentation as to the amount of such expenses. Indemnitee's written certification together with a copy of the statement paid or to be paid by Indemnitee shall constitute satisfactory evidence. Such advances are deemed to be an obligation of the Company to the Indemnitee hereunder, and shall in no event be deemed a personal loan.

Reconsideration Motion, Ex. A at 14.

The bankruptcy court determined that the Advancement Claim, because it was provided for specifically in the Indemnity Agreement itself, was included within Maddux's timely filed Proofs of Claim which were based, in part, on the Indemnity

17

Agreement. The bankruptcy court also determined that Maddux was not required to identify the advancement provision specifically, or to mention the word advancement in particular, in order to preserve his claim for all contractual rights under the Indemnity Agreement. We find no error in this reasoning or the bankruptcy court's ultimate conclusion.

Nor is the bankruptcy court's conclusion inconsistent with the Reorganized Debtor's argument that indemnification and advancement are not synonymous, but are two distinct and different legal rights. As explained by the Delaware Supreme Court:

> Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service. Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.

Homestore, Inc., 888 A.2d at 211. "[T]he advancement decision is essentially simply a decision to advance credit." Advanced Mining Sys., Inc. v. Fricke, 623 A.2d 82, 84 (Del. Ch. 1992). As advancement authority is permissive, the Delaware courts have required that the terms and conditions for advancement must be expressly provided by bylaw or contract. Homestore, Inc., 888 A.2d at 212; Advanced Mining Sys., Inc., 623 A.2d at 84.

Here, the Indemnity Agreement expressly states the terms and conditions for advancement of expenses. Nothing in the cases cited by the Reorganized Debtor or that our research uncovered, however, requires that advancement be provided for in a contract separate from other indemnification provisions. We conclude that the bankruptcy court was correct on the law and in its factual

18

finding that the Advancement Claim is included in the Indemnity Agreement-based claim.

**2. Maddux's Proofs of Claim sufficiently included the claim for advancement of expenses notwithstanding the lack of attachment of a copy of the Indemnity Agreement.**

The Reorganized Debtor also argues that the Proofs of Claim did not preserve the Advancement Claim where they did not attach the Indemnity Agreement or specifically disclose the advancement provision. We disagree and find no error by the bankruptcy court.

A failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone. Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. BAP 1995). Objections asserting lack of documentation may deprive the claim of prima facie validity, but the objector has the burden to present "evidence of equally probative value." In re Falwell, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009). The Reorganized Debtor here must demonstrate that the Advancement Claim should not be allowed based on one of the grounds listed in section 502(b). See In re Lasky, 362 B.R. 385, 387 (Bankr. C.D. Cal. 2007).

In effect, the Reorganized Debtor here relied solely on section 502(b)(9), which provides grounds for disallowance where a proof of claim was not timely filed.[9] It does not object to the timeliness of the Proofs of Claim; instead, it argues that

---

[9] The Reorganized Debtor has not cited any specific plan provision or other order entered in the bankruptcy case as a bar applicable to the Advancement Claim.

19

they do not sufficiently evidence a claim for advancement such that assertion of advancement rights at this time is not timely. As discussed above, the bankruptcy court properly found that the Advancement Claim was a part of the Indemnity Agreement-based claim, and therefore, also timely.

As stated by the bankruptcy court, the fact that the Proofs of Claim do not refer to every paragraph contained in the Indemnity Agreement is of no import:

> If somebody had to refer to every paragraph of their agreement, then there would be no point in having a one-page proof of claim form. I mean they refer to the agreement. He incorporates the agreement. He just said if you want to get a copy of the agreement, you can. Everybody knew what the agreement said.
> And to now say that because he didn't say advancement in particular, I mean there are probably a lot of words in that agreement that weren't stated in particular on the face of the proof of claim. It doesn't mean he doesn't get those rights anymore.

Hr'g Tr. (July 30, 2012) at 14:12-22.

Maddux identified the Indemnity Agreement and offered to provide a copy. The record reflects no request made by the Reorganized Debtor for a copy. MMPI, the Plan Proponents, and, thus, the Reorganized Debtor had access to the Indemnity Agreement. In effect, the bankruptcy court found that the Proofs of Claim gave sufficient notice of theories of recovery that included the Advancement Claim. In so doing, the bankruptcy court did not err.

**C.    The Bankruptcy Court did not abuse its discretion by abstaining.**

Abstention is governed by 28 U.S.C. § 1334(c).  A bankruptcy court may abstain from hearing a matter under 28 U.S.C. § 1334(c)(1), which states in relevant part: "[N]othing in this

20

section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

The Ninth Circuit has provided guidelines for consideration by bankruptcy courts to determine if permissive abstention is appropriate. The factors a bankruptcy court should consider in deciding permissive abstention are: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. Christensen v. Tucson Estates (In re Tucson Estates), 912 F.2d 1162, 1167 (9th Cir. 1990).

The Ninth Circuit also held that "[a]bstention can exist

21

only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain." Sec. Farms v. Int'l Bhd. Of Teamsters, 124 F.3d 999, 1009 (9th Cir. 1997) (abstention not applicable to removed action).

Here, the bankruptcy court expressed its reasons for exercising its discretion to abstain primarily during the initial hearing on the Reconsideration Motion, and only in passing during the hearing on the Advancement Claim. The bankruptcy court stated that: "if we're just talking about whether or not [Maddux is] entitled to indemnification - it should be decided by a Delaware court because it's based on Delaware law." Hr'g Tr. (May 25, 2012) at 2:11-13.[10] It further noted that: "Advancement, if it is time barred, because it's separate, that's based on a Bankruptcy Code provision and this Court should decide whether it's time barred." Id. at 2:14-16. The bankruptcy court stated that it seemed "kind of pointless" to require the Reorganized Debtor to bring a separate objection to the Advancement Claim on "time barred grounds," and therefore

_____

[10] As reflected in the transcript for the May 25, 2012 hearing, after the bankruptcy court heard oral argument on this matter, it held a status conference on what appears to be then-pending claims objections regarding severance claims asserted by Maddux and others. At one point the bankruptcy court, again in the context of consideration of abstention, discussed its sensitivity to issues regarding its post-confirmation jurisdiction. It is not clear whether this discussion was intended by the bankruptcy court also to indicate that it had considered post-confirmation jurisdiction questions applicable to the litigation regarding the Indemnity Agreement here.

continued the hearing with additional briefing allowed.  Id. at 14:6-7.

The bankruptcy court outlined how the two issues should be addressed:

> So that's my – and so my thought would be for the indemnification – of this particular litigation, because other litigation may be different if the debtors are co-liable, for this particular litigation, that this Court would abstain on the indemnification rights, except the Court would first decide – or maybe nothing would happen on advancement until the Court decided if it was time barred, this Court.

Id. at 3:5-12.  When the bankruptcy court ruled that the state court "could resolve at least whether [Maddux is] entitled to indemnity" (Hr'g Tr. (May 25, 2012) 20:16-17), the Reorganized Debtor did not disagree.  Id. at 20:18-19.

After the bankruptcy court heard oral argument on July 30, 2012, on the Advancement Claim, the bankruptcy court summarized its ruling and stated that:  "All I'm doing is saying that those contractual terms are going to govern, that they're not time barred because he didn't put the word 'advancement' in his proof of claim. . . .  The Court thinks every right that the debtor has under that contract should be asserted."  Hr'g Tr. (July 30, 2012) 18:3-5; 18:18-19.  Then, apparently referring to its abstention, the bankruptcy court stated:  "But this Court isn't going to be deciding the issues about advancement any more than it's deciding issues about indemnification."  Id. at 19:23-25.

We find no abuse of the bankruptcy court's exercise of its discretion to abstain on this record as indemnification and advancement rights are governed by state law, the dispute concerns post-confirmation litigation brought after the Effective

23

Date of the plan, and the Reorganized Debtor failed to articulate any effect or lack thereof on the efficient administration of the estate and cannot do so as the estate no longer exists post-confirmation.

On appeal, the Reorganized Debtor argues that the bankruptcy court did not properly exercise its discretion, because by abstaining the bankruptcy court inappropriately "refused to consider, or allow argument about, other bankruptcy-related or state law reasons to disallow the claim." Apl't Opening Br. at 19. The Reorganized Debtor also argues that the bankruptcy court is the only proper tribunal to allow or disallow a claim. Id. at 20.

The allowance or disallowance of claims is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Bankruptcy courts, however, generally have concurrent jurisdiction under 28 U.S.C. § 1334(b), not exclusive jurisdiction, unless there is some applicable exception. The Reorganized Debtor did not cite to any applicable exception here, and we located none. Nor has the Reorganized Debtor identified any other bankruptcy issue implicated here as to which the bankruptcy court has exclusive jurisdiction, and we know of none.

In its Reply Brief on appeal, the Reorganized Debtor argues that if it establishes (apparently in the State Court Action) that Maddux acted inequitably, then the Reorganized Debtor should be allowed to request that the bankruptcy court equitably subordinate Maddux's claims. Apl't Reply Brief at 13. But pursuant to the Charlestown Plan, undisputed unsecured creditors were paid in full on the Effective Date. Subordination in this

24

100% payout chapter 11 case is of doubtful, if any, applicability. Moreover, the Reorganized Debtor's generalized reference to the possibility of equitable subordination is insufficient to cause us to question the propriety of the bankruptcy court's exercise of its discretion to abstain.

**CONCLUSION**

For all the reasons set forth above, we AFFIRM the orders of the bankruptcy court.